**JARED J. SCHARF**
ATTORNEY AT LAW
1025 WESTCHESTER AVENUE, SUITE 305
WHITE PLAINS, NEW YORK 10604

(914) 682-9777

JARED J. SCHARF

ADAM L. SCHARF*

*NY, NJ BARS

December 10, 2007

<u>VIA TELECOPIER (390-4085)</u>

Honorable Charles L. Brieant
United States District Court
Southern District of New York
U.S. Courthouse
300 Quarropas Street
White Plains, New York 10601

    Re:   *United States v. Elia, et al.*
           *Docket No. 07 Cr. 543 (CLB)*

Dear Judge Brieant:

    We are scheduled to appear before your Honor tomorrow for a status conference. The defense will request an additional six months to prepare for trial. The reasons for this request are as follows:

**Nature of the Defense and Reason for Discovery Requests**

    The major portion of the defense in this tax evasion case will be that there is no additional tax due and owing. The government possesses evidence that defendant Elia purchased postal money orders using cash. We do not dispute this evidence. The government added up the money orders, gave defendant credit against that total for purchases that the government identified, and seeks to characterize the excess of (a) money orders purchased from the Postal Service, minus (b) defendant's purchases of store inventory using money orders, as unreported income in the hands of defendant Elia. The defense is that there is little or no excess, and that defendant used virtually all of the money orders for purchases of inventory for his stores and for other business expenses.

JARED J. SCHARF

Honorable Charles L. Bricant
December 10, 2007          Page 2

**Discovery of Evidence of Purchases**

We have been asking the government for more than two years to provide us the invoices. In the pre-indictment period, we received from the government copies of invoices and other records that it seized pursuant to search warrants. After considerable delay, the government finally made this information available. After we examined it, we determined that it was incomplete. We have been attempting to inform the government that this delivery is incomplete and that substantial additional purchases were made for which the government has not given the defense credit.

It was not until July, 2007, that we began receiving access to the complete set of records in the government's possession. It was not until October, 2007, that we began receiving copies of the invoices that had not been delivered to us previously. Our accountants began analyzing these items immediately. They had not completed their analysis as of the time of our last conference in this court on November 13. On November 14, we received the final 26 boxes of purchase data (invoices and notes that were seized from us and records received from third parties pursuant to grand jury subpoenas). Since November 14, the defense team has spent nearly 100 hours reviewing records we received for the first time November 14. (It is true, as the government has protested previously, that they were made available to us in October, but we did not yet have reason to analyze the November 14 records as we had not yet finished reviewing the items delivered to us in September.)

From our review, we have arrived at the following conclusions:

1. We have received a complete set of invoices from only four manufacturers of merchandise from whom defendant purchased inventory. Defendant also purchased inventory from at least 28 other manufacturers and made payments for inventory to 14 factors; complete sets of invoices from these 42 entities have not been made available. We did not know this until recently, and now that we do know it, we need to serve Rule 17(c) subpoenas upon these 42 manufacturers and factors.

2. We analyzed the invoices of the four manufacturers for whom we possess complete sets of invoices for 2002, which is the government's major year in terms of tax loss alleged. Based on those four manufacturers, we believe we are able not only to offset all additional income for 2002, but, beyond that, to prove losses for 2002.

3. Based on the nearly 100 hours that it took us to arrive at these conclusions, we believe that we need at least two more months to analyze invoices from the manufacturers whose complete invoices we do possess for the years 1999, 2000, and 2001.

JARED J. SCHARF

Honorable Charles L. Brieant
December 10, 2007          Page 3


4. Based on the need to serve Rule 17(c) subpoenas on 42 additional manufacturers and factors, we estimate that we need six months to prepare and serve subpoenas and to obtain and analyze additional invoices.

**Diligence by the Defense**

The foregoing merely constitutes the facts of the status of our preparations without regard to which party is at fault for the enormous amount of time that we need. If lack of diligence by the defense is placed in issue, as it has been previously, we believe we have been diligent in that we first began requesting this discovery June 21, 2007, the day after the initial appearance before your Honor. We have worked steadily once material first was made available to us one month later. We have steadfastly presented this defense to the government for over two years and requested access to all the purchase items. We received but a small fraction of the purchase items prior to indictment. We were not aware until we began examining the final 26 boxes of records, which we received November 14, that so much material was not available. This was a surprise to us as we believed that the government possessed all the purchase documents as a result of executing the search warrants.

Of course, we do not have any reason to believe that the government misplaced the records it seized from defendant. We do believe, however, that the government's informant for the search warrant was defendant's former bookkeeper and that she destroyed exculpatory evidence prior to the search. This belief is based on events that occurred between defendant and the bookkeeper and on false incriminating entries that we have found that the bookkeeper has made in sales books she kept for defendant.

Accordingly, we respectfully request an additional six months to prepare for trial. If this application is granted, we will use this time to (a) conclude our review of existing invoices and other purchase evidence for 1999, 2000 and 2001, (b) serve Rule 17(c) subpoenas (with the approval of the court, which we will seek) upon 42 manufacturers and factors, and (c) receive and analyze records from those 42 entities.

**Other Discovery Issues**

Aside from purchase invoices and other purchase documents, we still maintain that the government's responses to other discovery requests we have made are not complete or are not sufficiently informative. If we have requested items that the government does not possess or believes are not discoverable for some reason, we have a right to be informed that the government does not possess such items or does not believe that particular items are discoverable based on some articulated reason. However, the response we most usually receive from Ms. Dunne as to such requests is "We have given you all the items you are entitled to receive under Rule 16." That is the government's

## JARED J. SCHARF

Honorable Charles L. Brieant
December 10, 2007          Page 4

standard response. It is a mere conclusion; not a particularized legal response. We do not believe we are required to be bound by the government's conclusions. We do believe we are entitled to draw our own conclusions from more informative responses and, in the event we disagree, to file a motion.

We have learned from Ms. Dunne the basis for the government's objection to one item we have requested: statements made by Mr. Elia. We have made this request for defendant's statements repeatedly since July. Ms. Dunne's objection to providing us defendant's statements is that defense counsel was present and knows what Mr. Elia said. Until the last two weeks, we believed she was referring to prior counsel before the undersigned became Mr. Elia's lawyer. She did not specify what counsel she was referring to. Ms. Dunne finally informed me recently, after several inquiries on my part, that I was the counsel to whom she was referring. Regardless of my presence when Mr. Elia made statements at an innocence proffer, we still believe we are entitled to receive a copy of the government's version of what Mr. Elia said. This is an example of the enormous effort required on the part of the defense to obtain the most fundamental disclosures and of the government's piecemeal disclosures only after enormous persistence.

This "game" approach to discovery extends to the production of invoices; everything is a struggle. This experience is rather exhausting and unnecessary and has contributed to the difficulty we have had preparing for the trial.

Thank you very much.

Respectfully,

Jared J. Scharf by [signature]

cc: Cynthia K. Dunne, Esq.
    Joseph A. Vita, Esq.