UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

              v.                              07 Cr. 543 (CLB)

YEHEZKEL ELIA and
DAVID ELYAHO,

                      Defendants.
-------------------------------------------------------x

**MEMORANDUM IN BEHALF OF DEFENDANT YEHEZKEL ELIA IN
REPLY TO THE GOVERNMENT'S OPPOSITION AND IN FURTHER
SUPPORT OF HIS MOTION TO SUPPRESS EVIDENCE ILLEGALLY SEIZED**

**Introduction:**

On January 10, 2008, defendant Yehezkel Elia filed his motion to suppress

evidence illegally seized. The government filed its Memorandum in Opposition on

January 31, 2008. Elia respectfully submits this Reply Memorandum.

Essentially, and as shown below, the government responds only to Elia's

secondary argument, i.e., that the warrants' descriptions of the premises to be searched

lacked the required particularity. The government has provided virtually no meaningful

analysis in response to Elia's primary arguments, i.e., that the CI lied; that her lies were

obvious or readily ascertainable by an experienced agent as her alleged sales records

contained errors on their face and her alleged purchase records understated purchases,

and Eis could have easily checked them for accuracy; that the CI was unreliable in other

ways; that the government failed to attempt to corroborate the CI's allegations

meaningfully and offered corroboration only of facts that do not establish probable cause;

and Eis affirmatively misled the magistrate judge by implying that cash was deposited to

a nominee account at Schwab.

**The Government's Opposition**

The government did not meet Elia's points head-on, instead relying on a litany of boilerplate and rhetorical mischaracterizations of defendant's motion.  The government makes unsupported accusations against Elia that go to guilt or innocence rather than to whether the Eis affidavit was misleading.  The government also fails to attempt to justify Eis's attempt to suggest to the magistrate that Elia deposited cash from his stores to a Schwab account in his brother's name, although Eis was aware that no cash was deposited and that Yehezkel Elia's name also appeared on the account.  Instead of responding meaningfully and directly to Elia's main arguments, the government relies principally on unsupported characterizations and mutually inconsistent statements.

In pages 1 through 3, the government merely argues its view of the merits of the trial, essentially making an opening statement that contributes nothing to the Fourth Amendment issues raised in Elia's motion.  Such trial allegations (e.g., the business was "tremendously profitable"; with a "tremendous profit margin"; "large amounts of cash were simply siphoned out of the companies"; Elia "was seen with suitcases filled with hundreds of thousands of dollars of cash") are totally unsupported.

In pages 4 through 7, the government paraphrases the search warrant affidavit, concentrating on communications to Eis by the CI.  This discussion of communications ignores the defense arguments that those communications were not shown to be reliable.  Mere repetition of the wrong information provided by the CI cannot support an opposition to Elia's contention that the information was false.  The government's reference to the disparity between the CI's sales records and the sales per the tax returns is immaterial if the sales records are fabrications by an unreliable CI who is also a

disgruntled ex-employee, as Eis should have suspected she was. The daily envelopes from the stores do not support the CI's sales entries.

The government alleges (Memo at 6) that it possesses "no record of tax returns ever having been filed" for certain of Elia's entities. However, the government knows at this time that this argument is misleading, even if Eis did not know it in 2004. In July, 2007, while Elia's accountants were inspecting government discovery material, they informed Special Agent Longo that Dynasty's income was reported on Sneakermania's tax return. Longo responded that he is aware of that. (Genuth Affidavit at para. 6.)

The Background section (Govt. Memo at 3-7) culminates with Eis's "conclusion" that Elia was evading "the payment" of taxes, and committing other crimes, and that Magistrate Judge Fox agreed and issued the search warrants. (Govt. Memo at 7.) This discussion, of course, completely misses the point. If the CI's information was false and fabricated, if Eis had good reason to know that, and if Eis withheld that information from Magistrate Judge Fox, it does not matter that Magistrate Judge Fox agreed and issued the warrants.

The government's Summary of Argument at pages 8–9 discusses "corroboration" but, again, completely disregards Elia's point that what was corroborated is not material to a determination of probable cause to believe that <u>sales</u> were omitted. This goes only to probable cause to believe that purchases were omitted, which is not equivalent to probable cause to believe that the crime of evading "the payment" of taxes occurred. The government never attempts to support the CI's past reliability or to corroborate her representation that more cash was taken from the stores than the amount that was used to purchase inventory.

## ARGUMENT

## POINT ONE

**The Warrants Did Not Describe the Places to be Searched with the Requisite Degree of Particularity and the Errors Are Further Indications that Eis Failed to Conduct a Proper Preliminary Investigation to Determine Lily's Reliability**

The government initially argues (illogically in our view and without any proof) that "either Elia or someone else posted Suite 802" on the door.  (Govt. Memo. At 10.)  Within the same paragraph, however, the government makes the illogical leap from that unproven claim to the further accusation that Elia has "attempt[ed] to mislead the Court " which is "a sorry statement about how desperate he is to thwart the Government's case and borders on sanctionable."  (Govt. Memo at 10.)  1/

Such rhetoric is not justifiable.  As a matter of logic, neither Elia nor "someone else" had any reason to post the wrong suite number over the door as neither Elia nor "someone else" knew that the premises were going to be searched.  Without such knowledge, there is no reason for Elia or "someone else" to thwart the search team.  Moreover, if it were "someone else" (as the government concedes it could  have been), there is no justification for the government to accuse Elia of committing borderline sanctionable conduct.

The government's excuse that the "1BB Xavier Drive" address came from the tax return misses the point.  The address on the tax return is only an explanation of the reason Eis was wrong about the address of the place to be searched.   His reason for being wrong is not what is relevant.  What is relevant is that he could have searched a wrong location.

---

1/  The government appears to be unaware of the fact that our criminal justice system recognizes a defendant's right to "thwart the government's case."

Moreover, Eis's use of the tax return to establish the address shows that Eis did not conduct even the most fundamental form of investigation to obtain corroboration, i.e. a direct observation of a store in a public mall. An address on a tax return is an address where correspondence is received, not necessarily where business is transacted. The government's explanation is more helpful to the defense's argument that Eis failed to conduct the most rudimentary form of investigation to acquire proper corroboration.

The government's logic (Eis relied on the address on the tax return instead of verifying the correct address) poses a serious threat to the rights intended to be secured by the Fourth Amendment. Assume the government possesses probable cause to believe that evidence of a crime may be found at Location A, but also wants to search Location B, a location for which it lacks probable cause (for example Elia's residence). By the government's reasoning, all it would have to do to acquire a search warrant for Location B is find some form of extrinsic evidence to support its wrong "belief" that the correct address for Location A is the address for Location B. Thus, if Elia had listed his residence address on the tax return, the government's reasoning would support a search warrant for both the store, which is correctly named in the warrant, and for the residence, which is the address listed on the store's tax return. That would give the agents the expansive discretion that the particularity requirement of the Fourth Amendment was intended to secure against. Eis' lack of care in establishing the correct address was reckless or negligent and should result in suppression of the seized evidence.

## POINT TWO

**Even Assuming the Eis Affidavit Established Probable Cause on Its Face, That Probable Cause Was Based on (a) an Informant of Undemonstrated Reliability (b) whose Information was Patently Fabricated on its Face and Uncorroborated as to all its Essential Aspects and (c) Misleading Information Provided to the Magistrate**

### A. The Government Misled the Magistrate With Respect to the Schwab Account

The most telling indication that a major aspect of Elia's argument is on point is the government's failure to address it. Elia argued in his original motion that Eis's statement in paragraph 15 of his affidavit that the Customs incident is "another example of how Elia was using the cash proceeds from his stores" was misleading because the previous description of the Schwab account (paragraph 14) was not a first example. In paragraph 14, Eis never stated explicitly (because it would not be true) that Elia deposited cash into the Schwab account. However, by saying in paragraph 15 that the Customs incident in 2001 is "another example of how Elia was using the cash proceeds from his stores," Eis appears to be attempting to mislead the magistrate into believing falsely that Elia also deposited cash from the stores into the Schwab account in a nominee name. The government offers no explanation whatsoever for Eis's misleading introduction to paragraph 15, nor can one be conceived.

At the time Eis made this statement in his Affidavit of February 20, 2004, suggesting to the magistrate that cash was deposited to the Schwab account, he had possessed the checks and other items deposited to the Schwab account for more than two months, and he had possessed the account statements longer than that. (See Genuth Affidavit at para. 2 and Exhibits A and B). From these checks, Eis had to have known that none of the deposits was cash. (Genuth Affidavit at para. 3 and Exhibit C.)

6

Eis also had to have known at the time he prepared his affidavit that the Schwab account was not in the name of Samyr Elia to conceal Yehezkel Elia's connection. Yehezkel Elia's name clearly appears on the account as well as Samyr's. (Genuth Affidavit at para. 2 and Exhibit A.)

Eis withheld from the magistrate not only a clear statement that the Schwab account did not contain cash deposits, but also a clear explanation that the account contained the name of Yehezkel Elia and, therefore, was not used to conceal anything. Eis implied falsely that cash from the stores was deposited to the account and that the account was in the name of Samyr Elia to conceal Yehezkel Elia's connection to it. The government made no effort to deny that paragraphs 14-15 of Eis's affidavit constitute an attempt to mislead the magistrate.

Instead of defending this misleading language, the government talks around it. It states that the cash that was seized by Customs in July, 2001 was returned to Elia in the form of a check and that check was deposited to the Schwab account. Apart from the fact that there is no showing that the $43,992 cash was from the stores, this explanation does not contradict the argument Elia made in his original motion: The Customs incident is not "another example of how Elia was using the cash proceeds from his stores." If the seizure of the $43,992 cash constitutes probable cause for the issuance of a search warrant, it was probable cause in July, 2001, when the cash was discovered and seized and when Customs reported the incident to the I.R.S. It was not probable cause in February, 2004. The magistrate had to conclude from Eis's language in paragraphs 14 and 15 that store money was deposited into the Schwab account and that Customs seized yet other store money. Eis could not have meant it any other way. The government's

7

argument that the refund was deposited to the account does not mitigate the deception.

The government's statement that Elia is "disingenuous and exalts form over substance") (Govt. Memo at 14) is totally unsupported, conclusory, not responsive to the essence of Elia's argument, and illogical.  2/

### B.  The Information from the CI Was Not Reliable and the Alleged Corroboration Was Illusory

The government alleges that the CI's information was reliable and corroborated. and that she had a right to be at the "business premises" on a monthly basis to deliver rent she had collected.  Elia denied in his affidavit that she had a right to be present and maintained that he changed the locks to keep her out.  The government has failed to (a) provide the CI's affidavit or records of her alleged rent collections or (b) explain her presence in the stores and particularly in the stores' "basement storage areas."  If a hearing is granted on this motion, the defense expects to prove that all rent was mailed, not collected personally.

The government refers to no other alleged "corroboration."

### 1.  The Government's "Justification" for Failing to Acquire Meaningful Corroboration of the CI's Purchase Records Is Shocking

Elia argued in his motion that a cursory examination of the major vendor's sales records would have negated the CI's reliability.  The government's response is most

---

2/  The government's numerous accusations going to Elia's actual guilt, some of which references are noted above, are not informative regarding Eis's knowledge on February 20, 2004.  The government's statement, "the affidavit established that there was reason to believe that a search of the subject premises would yield evidence of tax crimes as well as structuring, which, in fact, they [sic] did" is an example.  (Govt. Memo at 12.) (Emphasis added.)  In reality, it did not reveal tax evasion.  See Genuth Affidavit at paras. 5 and Exhibit D.

8

shocking in its disingenuousness. The government claims that it is its practice not to

> "announce its interest in the company [that may be searched] to third
> parties before obtaining the search warrant. If the Government had
> subpoenaed all of Elia's vendors, word likely would have gotten to Elia
> that his conduct was under investigation, which, in turn, may have
> negatively impacted the success of the search."

(Govt. Memo at 16.)

Preliminarily, Elia never suggested that the government needed to subpoena "all

of" his vendors. A small sampling would suffice to corroborate or negate the CI's

story. By saying "all of Elia's vendors," the government exaggerates the danger it

claims exists. In fact, the government did not subpoena any of the vendors.

More important, this justification is patently absurd given the government's

communications with Schwab (Exhibits A and B) that equally could have "negatively

impacted the  success of the search."

In addition, the government loses sight of the real issue. The real issue is not the

"success of the search"; it is the establishment of the CI's reliability to support the search

in the first instance.   If the CI is not reliable, there ought not to be a search.  The

government's "success of the search" rationale betrays its complete confusion in regard

to the meaning of the Fourth Amendment. This argument could be used to support any

search warrant no matter how lacking in corroboration the supporting affidavit may  be.

In any event, the purchase records from Nike alone are vastly inconsistent with

the CI's alleged purchase journal, and the total of the purchase records from vendors

shows a major understatement of purchases in the CI's alleged records. The CI reported

$1,919134.05 in purchases from all vendors, whereas the defense has received evidence

that proves purchases in the amount of $2,676,987.00 thus far.  (Genuth Affidavit at para.

5 and Exhibit D.) Eis failed to attempt to obtain purchase records from any vendors. Perhaps he knew they would not corroborate the CI, or even establish her mendacity.

### 2.  The Government Failed to Attempt to Justify the CI's Reliability Following Her False Entry in the Pizza Sales Book

Under a heading titled "Allegedly 'Altered' Entry in Pizza Record," the government never once attempts to justify the sales figure entered by the CI for September 31, or to defend the effect this has on the CI's credibility, or to support Eis's blind indifference to the phony entry. Instead, the government attacks Elia and characterizes the error as an "alleged" alteration. The government ignores the defense argument that the false entry for September 31 is an indication that the entire book was fabricated, that the CI therefore lacks reliability and that it is likely that she is a disgruntled ex-employee out for vengeance, or that it was misleading to withhold this error from the magistrate as it goes to the CI's credibility.

The government argues instead that the defense offers "no support" that the CI later changed the entry to 10/31. Once again, the government has lost sight of the issue. The sales entry for the 31st day of September is what ought to have indicated to an experienced agent that the CI is a liar. Copying the amount to the October column is irrelevant other than to show the CI's crude attempt to cover-up the blunder she made when she hastily fabricated an alleged sales journal to support her story to Agent Eis.

Moreover, the government recklessly tosses out the phrase "without support" to describe the defense's statement that the CI changed the entry to 10/31. The support is the record itself. The same dollar amount that was crossed out under the 31st day of September was inserted under the 31st day for October. What further support is needed?

The government's other characterizations, such as "these unlikely arguments" and "overwhelming corroboration," and "overwhelming evidence" are mere unsupported rhetoric lacking any attempt at justification.

The statement that the CI's false entry shows that Elia's conduct was even "worse than what the government initially recognized" and that it "makes the warrant even more compelling" (Govt. Memo at 16) can only be described as bizarre. We are unable to discern how the CI's deletion of an error (i.e., a sales entry for a non-existent date) that she made in her hastily-prepared alleged sales journal makes the warrant even more compelling.

### 3. The Government Failed to Support Probable Cause for the Warrants By Corroborating that an Amount of Cash in Excess of The Amount that Was Used for Purchases Was Diverted

Eis stated in his Affidavit that there is probable cause to believe that Elia evaded his taxes and committed other offenses by taking cash from his business. But he admits that the cash was used by Elia to make product purchases. Elia argued in his motion that there is no indication that he took additional cash other than the word of an unreliable CI. Elia's motion showed that he used cash from the stores to fund product purchases for the stores and that he reported cash on his individual tax returns as income. The government does not dispute these uses of cash. Elia argued that there was no probable cause other than a mendacious ex-employee (and certainly nothing to corroborate her) to show that there was yet additional cash that was diverted and that would constitute probable cause to believe that tax and structuring offenses had been committed.

Rather than respond to this argument and defend the CI's reliability, the government states, "Whether or not he 'diverted' cash is a question unrelated to whether

or not there was reason to believe that Elia was committing tax and structuring offenses."
(Govt. Memo at 17.) This statement is bizzare, once again. Whether or not Elia diverted
cash was quite important according to the government. Eis relied on the alleged
diversions of cash to establish probable cause. Eis devoted a substantial portion of his
Affidavit, paragraphs 8-18, to attempting to demonstrate that Elia diverted cash from his
businesses.

In fact, the government states repeatedly, in the same Memorandum in
Opposition, that the diversion of cash is related. Thus, the government has stated the
following: that Elia "concealed tremendous income," "did tremendous cash business,"
"did not want to report that cash as income," "did not deposit the cash into his bank
accounts" (Govt. Memo at 1), "his businesses were tremendously profitable," but he
reported only minimal sales, and had a "tremendous volume of business" and a
"tremendous inventory," with a "tremendous profit margin," that he "siphoned out of the
companies" "large amounts of cash" and was seen "with a suitcase filled with hundreds
of thousands of dollars of cash." (Govt. Memo at 2.) These statements at pages one and
two of the government's Memorandum are totally inconsistent with the government's
statement at page 17 to the effect that Elia's diversion of cash "is a question unrelated to
whether or not there was reason to believe that Elia was committing tax and structuring
offenses."

## POINT THREE

### The Good Faith Exception to the Exclusionary Rule
### Does not Bar Suppression in the Circumstances of this Case

The government concludes with an argument that even if the warrants were issued without probable cause, the good faith exception bars suppression. We agree with the government's repetition of our discussion of the law. However, the government apparently misapprehends Elia's argument that the warrant was obtained in violation of *Franks* v. *Delaware* and, therefore, on the basis of the bad faith of the agent. The government acknowledges that the good faith exception does not apply where "(1) the magistrate was misled by information the affiant knew was false," *United States* v. *Leon*,468 U.S. 897 (1984). (Govt. Memo at 19.)

Virtually nowhere in the government's Opposition does the government even attempt to defend the reliability of the CI, or to justify Agent Eis's good faith belief in her reliability, or to explain Eis's failure to attempt to obtain meaningful corroboration to establish the CI's reliability, or to explain Eis's withholding from the magistrate of crucial information regarding the CI's reliability, or to defend Eis's attempt to mislead the magistrate into believing that cash from Elia's stores was deposited to the Schwab account in Elia's brother's name, while Eis knew that this was not true. The government does not even deny that the introduction to paragraph 15 of Eis' Affidavit is misleading.

## CONCLUSION

Based on the foregoing, the CI's reliability was not sufficient, and the affiant,

Agent Eis, attempted to mislead the magistrate by withholding material information and

otherwise.  Accordingly, the seized evidence ought to be suppressed.

Respectfully submitted,

Jared J. Scharf
Adam L. Scharf
 1025 Westchester Avenue
 White Plains, New York 10604
 (914) 682-9777

Attorneys for Defendant
 Yehezkel Elia

Dated:  White Plains, New York
         February 7, 2008

14