UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

        v.                                         07 Cr. 543 (KMK)

YEHEZKEL ELIA and
DAVID ELYAHO,

                Defendants.
-------------------------------------------------------x


## MEMORANDUM OF LAW IN BEHALF OF DEFENDANT YEHEZKEL ELIA IN RESPONSE TO GOVERNMENT'S MOTION IN LIMINE AND IN FURTHER SUPPORT OF ELIA'S MOTION IN LIMINE


**JARED J. SCHARF**
ATTORNEY AT LAW
1025 WESTCHESTER AVENUE | SUITE 305
WHITE PLAINS, NEW YORK 10604
(914) 682-9777

# TABLE OF CONTENTS

Page

Introduction..................................................................................................................1

Background.................................................................................................................2

Statement of the Facts.................................................................................................6

**ARGUMENT**

    A. The Government's Application for a Ruling Prior to Opening
       Statements on the Admissibility of Elia's Proffer Statements
       Is Premature ...................................................................................................10

    B. The Rule 404(b) Evidence Ought to Be Excluded as Much of it
       Was Served Out of Time, almost None of it Has Probative
       Value, and any Probative Value any of it May Have Is
       Substantially Outweighed by the Danger of Unfair
       Prejudice and Confusion................................................................................11

    C. The Government's Most Recent Untimely Evidence Ought
       To Be Excluded Based on Prejudicial Lateness and
       Based on Its Failure to Qualify for Admission under the
       Terms of Rule 404(b), and Based on Rule 403................................................12

       1. The Untimeliness of the New Evidence Causes
           Prejudice to the Defense ..................................................................12

       2. The Other Acts Evidence Is not Properly Admissible
           Under Rule 404(b) as It Is not Evidence of "Other"
           Crimes Wrongs or Acts Under Rule 404(b); It Is
           Also Unfairly Prejudicial, Confusing and Wasteful of
           Time Under Rule 403 ......................................................................14

CONCLUSION ........................................................................................................16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

      v.                                                  07 Cr. 543 (KMK)

YEHEZKEL ELIA and
DAVID ELYAHO,

                      Defendants.
-------------------------------------------------------x

**MEMORANDUM OF LAW IN BEHALF OF DEFENDANT
YEHEZKEL ELIA IN RESPONSE TO GOVERNMENT'S
MOTION IN LIMINE AND IN FURTHER SUPPORT OF
ELIA'S MOTION IN LIMINE**

**Introduction:**

The government filed a motion seeking a ruling in advance of opening statements on the admissibility of statements made by defendant Elia at a proffer on December 19, 2005. The government's motion also seeks a pre-trial ruling on the admissibility of its Rule 404(b) evidence for the purpose of proving intent. Defendant Elia contends that the former request is not ripe for a ruling and that the latter request ought to be denied as it is prejudicially untimely and lacks specificity and based on Rules 401, 402, 403 and 404(b), Federal Rules of Evidence.

In addition, Elia respectfully requests leave to supplement his motion in limine. Elia submitted his motion to chambers and served counsel by overnight mail on May 22, 2008 for delivery on the morning of May 23, 2008.[1] Later on May 23, the government

---

[1] In accordance with the Court's Individual Rules on bundling, as we understand them, we did not file the motion on ECF; we submitted a courtesy copy to chambers and served the government by overnight mail. When the motion has been completely briefed, we will file all the papers electronically.

provided its *Giglio* and Section 3500 material to the defense. Based on information found in the government's Giglio and Section 3500 material, it appeared for the first time that the government intends to introduce evidence of yet further other crimes, wrongs and bad acts. No actual notice pursuant to Rule 404(b) was served. The evidence underlying these alleged other crimes, wrongs and bad acts was first mailed to defendants on May 27 and 28, 2008, and received by the defense on May 28 and 29. Elia respectfully requests that such evidence of alleged other crimes, wrongs and bad acts be excluded. The actual evidence was mailed to defendants 25 and 26 days after the court-imposed deadline for delivering marked exhibits. Not only was delivery untimely for inclusion in a Motion in Limine that was due to be filed May 23, 2008, but the evidence does not constitute "other" crimes, wrongs or acts, under Rule 404(b) and is inadmissible under Rule 403.

**Background:**

The government offers a "Background" to its motion that recites conclusions regarding Elia's guilt and unworthiness. The defense contends that a more accurate background involves the circumstances surrounding Elia's proffer on December 19, 2005, rather than a stream of unsubstantiated conclusions.

In 2005, Elia attempted to negotiate a plea agreement with the government. Toward that end, he made a proffer. He told the truth, as he perceived it, and offered to enter a plea of guilty. A plea agreement was not agreed upon. While certain aspects of the government's offer were quite reasonable, the benefits of the proposed plea agreement were more than offset by the government's insistence that Elia admit to a tax loss in an amount in excess of $800,000. Elia maintained that he was not certain of the amount of any tax loss that may have resulted from his use of money orders, but that it

certainly was nowhere close to $800,000. Elia maintained that he used almost all of the store cash to purchase money orders and he used almost all of the money orders to purchase inventory for his stores and to pay other business expenses, thereby reducing additional taxable income to zero or to an amount substantially less than the amount the government asserted. The difference between the government's tax loss figure and Elia's was enormous.

Elia offered to prove to the government that any tax loss that may have occurred was substantially less than $800,000. However, he lacked the evidence he needed to do so, as it had been seized during the execution of search warrants on February 24, 2004. Elia requested copies of the items that were seized from his office and from his stores during the execution of the search warrant. After a long period of delay, the government finally produced approximately 20 boxes of seized items (after Elia was forced to agree to pay the cost of having his own records photocopied), including purchase invoices.

However, upon inspection, it was clear to Elia that the seized items did not include a full set of purchase invoices. The government did not give Elia at that time other invoices it had obtained from third parties pursuant to grand jury subpoenas. By producing only the seized invoices, the government made it impossible for Elia to prove, pre-indictment, his actual purchases. Elia has no reason to suspect that the government held back invoices it had seized. However, the invoices that were seized were an incomplete set and, therefore, were useless to Elia, as well as costly in terms of wasted time and money. Without the subpoenaed invoices, Elia was unable to prove to the government's satisfaction the full extent of his merchandise purchases. Therefore, he could not prove the lesser tax loss he insisted applied.

Elia was forced to either plead guilty to what he believed were grossly wrong tax loss amounts or to wait to be indicted and thereby obtain discovery of a complete set of invoices, as well as subpoena power to compel production of additional invoices.

Fortunately, the government had served grand jury subpoenas upon Elia's vendors, and many additional purchase invoices were obtained by the government. Unfortunately, these additional invoices were not provided to Elia until substantially after the indictment, i.e., beginning approximately November, 2007. Elia's accountant's work in 2006 in analyzing the invoices from the search warrant was rendered useless once a more complete set of purchase invoices was produced during discovery, and the accountant's analysis of purchases had to start all over again (thereby creating a massive waste of professional time and effort, as well as expenses for professionals' services and for photocopying of the incomplete set of invoices contained in the search material). Due to the press of other business (i.e., the tax season during which the accountant had to prepare tax returns for numerous other clients) and Elia's limited resources, that work still has not been concluded. Elia's accountants estimate that they need substantial additional time to complete their analysis of the thousands of invoices they obtained in November, 2007. This analysis is further complicated by the government's continuous and piecemeal installments of supplemental disclosures on an almost weekly basis up to the date of this memorandum.

However, from the analysis prepared to date, it is clear to the defense that the government is incorrect as to the tax loss. The government's draft computations were provided to the defense on May 23, 2008. From our preliminary review, it appears plain to the defense that the government's computations contain numerous defects. The

government apparently added to its pre-indictment figures purchases that were undeniable that it had not included in 2005 when it determined a tax loss in excess of $800,000. To compensate for this decrease in the original tax loss upon which the plea agreement was premised, the government now seeks to employ novel and unprecedented Rule 404(b) theories. It taxes every dollar of alleged omitted income four separate times: first under the federal corporate income tax, second under the federal individual income tax, third as New York State income tax, and fourth as New York State sales tax. The government also seeks to impose a fifth tax, i.e., a payroll tax. Only the federal corporate and individual income taxes are charged in the indictment. The government's computations also contain defects that do not comport with generally accepted accounting principles or the law.

It is against this backdrop that the government now seeks to compensate for defects in its ability to prove one element of the offense (a substantial additional tax due and owing) with an overabundance of alleged Rule 404(b) evidence and with Elia's proffer statements that are inadmissible under the terms of the Proffer Agreement. The proffer statements should not be admitted unless the defense "opens the door." Much of the Rule 404(b) evidence is not admissible under that Rule, is not admissible under Rules 401 and 402, and is certainly not admissible under Rule 403.

5

**Statement of the Facts**

The parties agree that Elia used cash from the stores to purchase money orders. The government has admitted in its present motion and in various other filings that Elia used the money orders to purchase inventory for his stores, which is a deductible expense in computing taxable income. If Elia used all the unreported cash from the stores to purchase money orders and all the money orders to purchase inventory or to pay other business expenses, there is no tax harm. Given the government's admission that Elia did, in fact, purchase numerous money orders on numerous occasions (Govt. Memorandum at 2) and that Elia used "a large amount of the money orders to purchase inventory for Elia's businesses" and that only "some money orders were used to pay personal expenses" (Govt. Memorandum at 3), the government's ability to prove an element of tax evasion (i.e., a substantial additional tax due and owing) depends on its ability to prove that "some money orders were used to pay personal expenses" and other money orders went into foreign investments. (Id.)

However, the defense believes that the government does not possess evidence to show what Elia did with the $2.5 million of cash he allegedly diverted. It possesses evidence of a mere $200,000 in personal nondeductible expenditures. Elia maintains that there is no missing $2.5 million; he used all or almost all of the cash to purchase inventory.

In order to create room to accommodate these alleged personal expenses and foreign investments, the government alleges (as it must) that Elia's business purchases are in substantially lesser sums than the defense believes are correct. To prove its figures, the government will rely on its cooperating witness, Hajrij Zherka ("Lily"). Lily

6

will testify that she observed Elia carry hundreds of thousands of dollars of cash out of the stores. The defense believes that Lily is an essential witness for the government. Lily is seriously tainted, as discussed below (only minimally). She was Elia's corporations' bookkeeper until February, 2003.

The defense will rely on the actual purchase invoices, including those that were seized in the execution of the search warrant <u>and</u> including those that were not on the premises during the search and seizure but which were obtained from third parties pursuant to the government's grand jury subpoenas and the defendant's Rule 17(c) subpoenas.

The defense believes that Lily removed purchase invoices from the premises prior to the search and seizure. Lily clearly had a motive and the means to do this. As to motive, it appears from the *Giglio* and the Section 3500 material that was provided to the defense on May 23, 2008, that the investigation began with Lily making a claim for a reward. Under I.R.C. Section 7623, an informant is entitled to receive as a reward a minimum of 15% and a maximum of 30% of the taxes, interest, and penalties that the government collects from a taxpayer as to whom the informant provides information. Lily's information was false. It is based on her own unauthorized and false set of books and records. The defense believes that it will prove that Lily's records of sales are overstated and her records of purchases are grossly understated and that she did this intentionally to maximize the amount of her reward. The defense believes that the invoices that are missing from the search and seizure material correspond to purchases that Lily intentionally omitted from her alleged books. It also appears from the Section 3500 material and the government's exhibits and proposed stipulations that the

7

government is not relying for its proof of purchases on the actual purchase invoices, but rather on Lily's (phony) books and on the manufacturers' records of payments from Elia (which exposes an additional defect in the government's case).

Given Lily's chance to reap a huge reward, the defense believes that she has a motive to falsify the amount of allegedly evaded taxes. In addition, she had the means to destroy evidence that would disprove her false books. The affidavit in support of the search warrant relied on Lily's unauthorized presence in the basements of Elia's stores throughout 2003 and into 2004, long after she no longer worked for Elia's companies. Therefore, she had not only the motive (a Section 7623 reward of up to 30% of the government's recovery from Elia), but also the means, by virtue of her trespasses (or burglaries), to destroy invoices prior to the search, which she knew was imminent because she was the informant. She knew that Elia would need these invoices to prove that he did not evade taxes at all or, if he did, not nearly in the amounts reflected in Lily's unauthorized books and records.

Lily's ability to be an effective witness for the government will be impaired not only because of her motive to reap a huge reward, and not only by virtue of her trespasses at the stores, and not only because her purchase records omit the same purchases as the missing invoices, but for several other reasons as well. As one example, a security camera shows Lily removing cash from the cash register and then breaking into a desk drawer in one of Elia's stores on December 29, 2002, a Sunday. Testimony the defense anticipates offering will prove that Elia kept his signature stamp locked in that drawer. The defense has requested that the government provide checks dated close to the date on

the break-in video in order to determine if they bear stamped signatures and are made out to unknown payees or to known payees for unknown purposes.

However, according to the Section 3500 material, Lily made one statement that was unwittingly quite exculpatory. She said that the accountant who prepared Elia's tax returns, Paul Lenok, had access to all the sales and purchase information. The government's motion requests this Court to admit evidence to the effect that Elia admitted at his proffer that he did not provide all necessary documents to Lenok. However, even if Elia did make that admission, and believed it to be true, it is not true, according to Lily. Elia was rarely present at the office at the same time that Lenok was. However, Lily was present, and she knew what information was provided to Lenok. Therefore, notwithstanding Elia's statement in his proffer that he did not provide Lenok with all necessary documents, that statement is not a relevant admission if Elia knew that Lily provided all necessary documents to Lenok and that Lenok was aware of the information in any event. Elia's admission does not preclude his knowledge that Lily provided all necessary information to Lenok.

## ARGUMENT

### A. The Government's Application for a Ruling Prior to Opening Statements on the Admissibility of Elia's Proffer Statements is Premature

To make up for defects in its ability to prove one element of tax evasion (substantial additional tax due and owing), the government desperately wants to use Elia's proffer, as well as evidence of other crimes, wrongs or acts, to prove intent. However, its motion to use the proffer is premature. The defense agrees that the government is entitled to use <u>any specific point</u> in the proffer to rebut any related specific point that Elia or his lawyers may make that is contrary to a specific point in the proffer. However, the government may not use the entire proffer to counter a narrow "opening of the door" by the defense. Essentially, the defense agrees with the government's request to use the proffer in a proper, focused manner, pursuant to the terms of the proffer agreement, if the defense opens the door to such use. However, the defense does not intend to open the door, and, if it does, the defense intends to do so narrowly, so as to exclude the government's right to offer the entire proffer. (The defense does intend to argue that the government's proof is insufficient to meet its burden.)

Certainly, the door will not have been opened as of the time the government makes its opening statement. Therefore, the government's request for a ruling prior to the opening statement on whether it may use the proffer is pointless and premature.[2]

---

[2] Since the government ordinarily does not make pointless and premature motions, one wonders what the government's point was in making its present motion.

### B. The Rule 404(b) Evidence Ought to Be Excluded as Much of it Was Served Out of Time, almost None of it Has Probative Value, and any Probative Value any of it May Have Is Substantially Outweighed by the Danger of Unfair Prejudice and Confusion

In regard to the government's other argument, i.e., seeking to support its use of "404(b) evidence," the defense agrees with and hereby incorporates by reference the objections by codefendant's counsel concerning the untimeliness of the request and the lack of specificity on the part of the government regarding the nature of the evidence to be offered. We also respectfully refer the Court to Elia's Motion in Limine. As stated in that motion, the government's evidence of relatively meager personal expenditures (when contrasted to the amounts of cash allegedly diverted) lacks relevance under Rule 401, is therefore not admissible under Rule 402, and certainly is not admissible under Rule 403, given the unfair prejudice and confusion of the issues that would result from the introduction of such evidence. The government's evidence cannot come close to accounting for the approximately $2.5 million of cash that the government alleges Elia diverted from his stores. Its effort to prove that Elia spent or had seized from him a total of approximately $200,000 over a four-year span is meaningless and lacks any probative value whatsoever. The government cannot prove what happened to the remaining $2 million plus of alleged diverted cash.

Even beyond that, the government's evidence (Section 3500 material and exhibits) cannot link any of the "404(b) evidence" to cash Elia diverted from the stores. Given Elia's age at the time of the events described in the indictment and at the time of the expenditures and the Customs seizure (approximately 50-54), there is no probative value arising from evidence that Elia possessed $200,000 over a four-year period to spend on personal expenditures. Any inference that Elia's use of cash to pay for personal

expenses proves that the cash was unreported cash that he spirited out of his stores in the same years is no more likely than the inference that Elia, a 50-year old businessman, had accumulated savings or had nontaxable sources of income to pay for these personal expenditures. Without evidence to connect the relatively modest sums of money involved in the "404(b) evidence" to cash from the stores, the personal expenditures and other "bad acts" are totally meaningless and lack all probative value.

Even with such evidence, they lack probative value if the invoices prove that all or almost all of the money orders were used to pay for business purchases. Therefore, the evidence of personal expenditures in such relatively minor sums not only lacks probative value, but can only serve to prejudice Elia unfairly and to confuse the jury.

### C. The Government's Most Recent Untimely Evidence Ought to Be Excluded Based on Prejudicial Lateness, Based on Its Failure to Qualify for Admission under the Terms of Rule 404(b), and Based on Rule 403

#### 1. The Untimeliness of the New Evidence Causes Prejudice to the Defense

In addition to the items we previously sought to exclude in our Motion in Limine, the defense now seeks to exclude from the trial all evidence of alleged sales tax evasion, state income tax evasion, payroll tax evasion, the additional taxes that arise from the foregoing alleged tax evasions, as well as evidence of failure to file tax returns for 2004 and 2005. None of this is charged in the indictment.

Evidence of other forms of tax offenses was first provided to the defense by an overnight mailing on May 27, 2008, for delivery May 28, 2008. Further evidence was delivered to the defense the date on this motion, May 29, 2008. The Court ordered that all marked exhibits be produced on or before May 2, 2008, giving the defense time to file

motions in limine on or before May 23, 2008. Yet the government did not provide the defense notice of its latest Rule 404(b) evidence or the evidence itself until after Elia filed his motion in limine on May 23, 2008. At the same time, the government diverted the defense from its own trial preparation activities in other ways. It filed its motion seeking the admissibility of the late evidence. It pressed the defense for its response to the government's proposed stipulations, which were not served upon the defense until May 21, 2008.

Also, at the same time, the government served upon Elia's *Kovel* accountants a trial subpoena requiring the production on or before June 2, 2008, of privileged work product and non-privileged, but clearly irrelevant, work product, apparently intended to be used to support proof of some of the newly conceived uncharged crimes. In order to comply with that subpoena at this late stage, the defense would incur a tremendous burden in terms of time lost from trial preparation. Elia's principal accountant and expert witness who is in the best position to locate the items required to be produced will be unavailable virtually all the time from May 30 through June 11 due to his daughter's wedding in New York on June 4, connected activities in Chicago before and after June 4, important religious observance through June 10 and return travel to New York June 11. (See defendant's motion to quash and accompanying Affidavit of Bernard Katz.) As a result of this subpoena for seemingly improper evidence, the defense was compelled to devote additional time to the preparation of a motion to quash.

All this last-minute activity that the government forced on the defense combined, in effect, to consume an entire week of defense team time, and it did so a mere two weeks prior to jury selection, at a time that the defense is attempting to prepare its own case.

The government's belated service of alleged Rule 404(b) evidence, simultaneously with other burdens it created for the defense at nearly the last minute, caused the defense to be prejudiced in its ability to respond. The government's last-minute, desperate efforts to dump evidence of other crimes, wrongs and bad acts on Elia is not only out of time, but imposes substantial burdens on the defense. The untimely evidence ought to be excluded on that basis alone. [2a/]

### 2. The Other Acts Evidence Is not Properly Admissible Under Rule 404(b) as It Is not Evidence of "Other" Crimes Wrongs or Acts Under Rule 404(b); It Is Also Unfairly Prejudicial, Confusing and Wasteful of Time Under Rule 403

If the untimely served evidence of other crimes, wrongs and bad acts is not excluded due to untimeliness, it ought to be excluded on the merits. The indictment charges Elia only with **income** tax evasion, **income** tax fraud, and conspiracy to defraud the United States in the ascertainment of **income** taxes. The sales, payroll and state tax evidence and the evidence of failure to file timely income tax returns for 2004 and 2005 that the government sent to the defense for delivery on May 28 and May 29 does not constitute evidence of "**other** crimes, wrongs or acts" as provided by Rule 404(b). (Emphasis added.) Other than the failure to file for 2004 and 2005, these acts are the **same** acts as alleged in the federal income tax counts, with different criminal consequences. Therefore, they add nothing to the jury's ability to infer intent to commit income tax evasion. Elia's acts either were intended to evade federal income taxes or they were not. The fact that an additional consequence of these **same** acts may have been state sales tax, state income tax, or federal payroll tax liability is not probative on the

---

[2a/] After this memorandum was completed and photocopied on May 29, the defense learned that yet another subpoena was served upon defendant's *Kovel* accountant.

issue of whether the acts were committed with the intent to evade federal income taxes.

Evidence of or allusions to the uncharged crimes of sales tax, payroll tax, and state income tax evasion has no "tendency to make the existence of" intent to commit federal income tax evasion "more probable or less probable than it would be without the evidence." Rule 401, Federal Rules of Evidence. Therefore, it is inadmissible under Rule 402. And since such evidence and argument can do nothing other than give rise to unfair prejudice and confusion, it ought to be excluded under Rule 403 in any event.

As to the proposed evidence of failure to file income tax returns for 2004 and 2005, pursuant to Title 26, U.S.C. (Internal Revenue Code) Section 7203, such evidence is unduly complicated under Rule 403, Federal Rules of Evidence. It would introduce into the trial serious Constitutional issues, *California v. Byers*, 402 U.S. 424, 449 (1971); *United States v. Romano*, 938 F.2d 1569 (2d Cir. 1991); *United States v. Carlson*, 617 F.2d 518 (9th Cir. 1980),[3/] as well as issues going to Elia's willful intent and reliance on the advice of counsel.[4/] The latter issues would give rise to further issues of disqualification of counsel. These issues should have been raised and argued long ago.

---

[3/] The criminal investigation began before these tax returns were due to be filed. Had Elia filed during the investigation, such returns could have been used to incriminate him as the government was focusing on him and certainly would have examined subsequent year tax returns to find either admissions (inconsistencies with the tax returns under investigation) or evidence of further alleged crimes (based on consistencies with the tax returns under investigation).

[4/] As a result of the foregoing issues, experienced criminal tax defense lawyers routinely advised targets of tax investigations to request indefinite extensions of the deadline for filing subsequent year tax returns pursuant to the Fifth Amendment. S. Michel, *Criminal Tax Investigations and Current Year Returns: New Thoughts on a Perennial Issue*, 19 White Collar Crime 1 (December, 2004). This prevailing wisdom makes proof of a defendant's willful intent problematic if he was following the government's practice of not prosecuting for willful failure to file in such circumstances or if he was relying on the advice of counsel.

## CONCLUSION

Based upon the foregoing, the government's motions for pre-trial rulings on the admissibility of Elia's proffer statements and on the admissibility of alleged other crimes, wrongs and bad acts ought to be denied in all respects.

                                          Respectfully submitted,

                                          Jared J. Scharf
                                          1025 Westchester Avenue
                                          White Plains, New York 10604
                                          (914) 682-9777

                                          Attorney for Defendant
                                              Yehezkel Elia

Dated:  White Plains, New York
          May 29, 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNITED STATES OF AMERICA,

          v.                                                         07 Cr. 543 (KMK)

YEHEZKEL ELIA and                                     **AFFIDAVIT OF SERVICE**
DAVID ELYAHO,

                 Defendants.
------------------------------------------------------x

STATE OF NEW YORK           )
COUNTY OF WESTCHESTER   ) ss:

       CHRISTINA A. OGANDO, being duly sworn, deposes and says:

       1. I am not a party to this action and I am over the age of 18.

       2. On May 29, 2008, I served a true copy of the enclosed Memorandum of Law in Behalf of Defendant Yehezkel Elia in Response to Government's Motion in Limine and in Further Support of Elia's Motion in Limine, by Federal Express overnight delivery to the following persons at the following addresses:

                Cynthia Dunne
                Assistant United States Attorney
                United States Attorney's Office
                300 Quarropas Street
                White Plains, New York 10601

                Joseph A. Vita, Esq.
                327 Irving Avenue
                Port Chester, New York 10573

                                                          CHRISTINA A. OGANDO

Sworn to before me on this
29th day of May, 2008

_Katherine Simicevic_
Notary Public

                                                          KATHERINE SIMICEVIC
                                               Notary Public, State of New York
                                                         No. 4956357
                                           Qualified in Westchester County
                                         Commission Expires September 18, 2009