UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNITED STATES OF AMERICA

       v.                                          07 Cr. 543 (KMK)

YEHEZKEL ELIA and
DAVID ELYAHO,

                Defendants.
------------------------------------------------------x

# MEMORANDUM OF LAW IN BEHALF OF DEFENDANT YEHEZKEL ELIA IN REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE AND GOVERNMENT'S MOTION TO PRECLUDE UNSUBSTANTIATED TAX CALCULATIONS

**JARED J. SCHARF**
ATTORNEY AT LAW
1025 WESTCHESTER AVENUE | SUITE 305
WHITE PLAINS, NEW YORK 10604
(914) 682-9777

**TABLE OF CONTENTS**

Page

Introduction ............................................................................................................. 1

The Customs Seizure ............................................................................................... 3

Paul Lenok .............................................................................................................. 5

Foreign Bank Accounts............................................................................................ 8

Elia's Personal Expenditures ................................................................................... 9

Unsubstantiated Tax Figures .................................................................................. 11

The Subpoena for Bernard Katz's Records ............................................................ 12

CONCLUSION ...................................................................................................... 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

        v.                                        07 Cr. 543 (KMK)

YEHEZKEL ELIA and
DAVID ELYAHO,

                Defendants.
-------------------------------------------------------x

**MEMORANDUM OF LAW IN BEHALF OF DEFENDANT
YEHEZKEL ELIA IN REPLY TO GOVERNMENT'S OPPOSITION
TO DEFENDANT'S MOTION IN LIMINE AND GOVERNMENT'S
MOTION TO PRECLUDE UNSUBSTANTIATED TAX CALCULATIONS**

**Introduction:**

The government argues strenuously in support of its right to offer evidence of other crimes, wrongs and bad acts. If admitted to the extent requested by the government, the evidence of alleged other crimes wrongs and bad acts will overwhelm the evidence of the acts charged in the indictment and swallow up the trial, making it a trial of collateral issues, creating massive confusion and unfair prejudice. The defense will be forced to put aside its preparation of a defense to the charged crimes and develop defenses to a barrage of very recently contrived uncharged crimes.

The government's bad acts evidence consists of two phases: (a) The Customs incident, the foreign bank accounts and the relatively minimal personal expenditures, and (b) The evidence of other alleged tax crimes, including state sales tax, state income tax, and payroll tax evasion and failure to file tax returns for 2004, 2005, and 2006. The government's intent to use this evidence was never communicated to the defense pursuant to Rule 404(b). Its Rule 404(b) notice of May 2 did not refer to such crimes.

(Govt. Memo at Exhibit B, at 3.) Instead, it just appeared in the government's Draft computations which were delivered on May 23, 2008. The underlying evidence was delivered on May 28 and 29, nearly four weeks after the deadline (May 2) for production of the government's marked exhibits.[1/]

The government also seeks leave to offer into evidence admissions Elia made in a proffer statement. The latter request is based on the government's argument that "it appears that he may contradict (the statements) at trial." (Memo at 2). This speculation disregards our motion in limine in which we stated that we will not contradict the proffer statements at trial, as well as our acknowledgement that, even if the defense does contradict a particular proffer statement at trial, the government is entitled to use the proffer to rebut that one point, consistent with the Proffer Agreement.

The evidence of the alleged other crimes is prejudicially late. If admitted, it will cause enormous confusion in that it will give rise to a series of mini-trials and collateral arguments regarding uncharged crimes. The defense has absolutely no time to consider the late evidence, let alone develop defenses. Moreover, the alleged other tax evasion crimes (sales tax, state income tax, payroll tax) do not constitute proper Rule 404(b) evidence. They are the natural consequences of the conduct underlying the charges; they are not "other" bad acts or crimes or wrongs, as required by Rule 404(b). The failures to file subsequent year tax returns raise numerous collateral issues on which the defense would be entitled to present evidence in the form of law, creating confusion. See Elia's

---

[1/] Additional Rule 404(b) evidence arrived June 2.

2

Memorandum of Law in Response to Government's Motion in Limine and in Further Support of Elia's Motion in Limine, May 29, 2008 at 15, notes 3 and 4. Nevertheless, the government now desperately urges the admissibility of evidence of other crimes due its apparent and belated realization that its evidence to prove the elements of the crimes charged in the indictment is extremely flawed.

**The Customs Seizure**

The government wants to use the Customs seizure, but not Elia's statement that led Customs to return the seized cash (minus a $5,000 fine). The government's "theory" of the relevance of this incident is that it proves that Elia had unreported income from his stores because he carried $43,992 cash with him on a flight to Israel. When all but $5,000 was returned, following an investigation into Elia's explanation for the cash, Elia deposited a Customs refund check in the amount of $37,000 into a Schwab account "that Elia maintains in the name of his Israeli national brother, Samyr." The government conveniently omits the fact that Yehezkel Elia's name and address appeared on the account statements, together with Samyr Elia's name, that, therefore, there was no intent to conceal. Moreover, the government also omits the fact that there were no cash deposits to that account, that the Schwab account is not linked to the businesses named in the indictment in any way, and that, therefore, the incident does not shed any light on the question of Elia's intent to evade taxes on alleged unreported business income.[2/]

Moreover, as we argued before, there is no relevance to this incident under Rule 401 because the money was returned based on an investigation by Customs and the IRS

---

[2/] The unifying fallacy at the core of the majority of the government's arguments in favor of admitting Rule 404(b) evidence is that any use of cash is equivalent to proof that the source of the cash was diversions of business income that year. As shown below, there is no evidentiary premise to support this fallacious thinking.

3

into Elia's explanation that the cash was proceeds of a business and that a tax was paid on that cash. Now the government adds to its original motion a supplemental request to keep out of evidence Elia's written statement to Customs, which is seemingly as admissible under Rule 803(6) as the accompanying Customs documents that the government wishes to introduce.

The defense maintains that the Customs incident is not admissible based on reasons we argued previously (the isolated nature of the incident, the acceptance by Customs and IRS of Elia's explanation, the fact that Elia earned the cash from a business and paid taxes on it, the small sum relative to the amounts of evaded taxes charged in the indictment).

Unless the government can link the $43,992 to diverted cash from the stores, the incident is probative of nothing. However, even if the Court were to rule that the incident is probative and relevant and that the probative value substantially outweighs the unfair prejudicial effect, Elia's written statement to Customs ought to be admissible.

The government now acknowledges that it cannot "trace a particular dollar to a particular store." (Memorandum at 4). That is not the issue. The government also cannot trace _any_ dollar to _any_ store. If, as we expect, Elia can prove that he used all or almost all of the money orders to purchase inventory that he sold in his stores and for other business expenses, then the $43,992 is not from any store. Moreover, the amount is not suspicious for a businessman of Elia's age, and the government has no evidence (that it has disclosed to the defense) to prove that Elia did not have cash from sources other than his stores, such as savings from earlier years, loans, gifts, inheritances, etc.

4

For these numerous reasons, there is absolutely no probative value in the Customs Incident.

**Paul Lenok**

The government agrees not to offer evidence of what Lenok may have said to investigating agents, his good character or the manner in which he prepared the tax returns. (Memorandum at 4).

Instead, the government. now (as of May 2, 2008) seeks to treat Lenok and Hajrij Zherka ("Lily") as unindicted coconspirators as a means of admitting into evidence Lenok's alleged statements to "others" (presumably meaning to Lily, the government's all-purpose witness) pursuant to the coconspirator exception to the hearsay rule. .

**This is a transparent ruse dreamed up at the eleventh hour to cure defects that go to the core of the prosecution. There was no conspiracy involving Lenok and Lily. The only conspiracy count in the indictment involves Final Touch, the 100-square foot kiosk that sold cheap trinkets. If there were a conspiracy involving Lenok and Lily, it would necessarily cover Pizza Mania and Sneaker Mania, as well as Final Touch. How could Elia, Elyaho, Lily and Lenok conspire to defraud the United States with respect to Final Touch, but not with respect to Pizza Mania and Sneaker Mania?**

The government's May 2 notice reflects a poorly thought out scheme to contrive a basis for admissibility of statements allegedly made by Lenok. The grand jury did not intend to include Lenok as an unindicted coconspirator with respect to Sneaker Mania, Pizza Mania or Final Touch. The only conspiracy count relates to Final Touch. Lenok's alleged statements to Lily ought to be excluded not only because Lily's testimony will be

5

shown to be fabricated and totally unreliable, but also because they are hearsay and there is no conspiracy involving Lenok that would trigger the coconspirator exception.

The government intends to offer in evidence statements that Lenok made to "others" to the effect that Elia essentially is guilty (i.e., that Lenok "had discussed Elia's potential exposure with Elia and the danger of preparing corporate tax returns based solely upon the bank statements"). (Memorandum at 6). Certainly, the "others" who will relate this alleged admission amount to Lily, the all-purpose witness for the government, and no one else. Preliminarily, such a statement does not appear to be "in furtherance of the conspiracy," pursuant to Federal Rule of Evidence 801(d)(2)(E), and therefore would not be admissible even if there were a conspiracy.

The government says that this alleged statement by Lenok is consistent with Elia's proffer wherein he stated that he provided Lenok with the bank statements, showing deposited income, but not undeposited cash. Preliminarily, we believe that it is improper for the government to rely on the proffer under the terms of the Proffer Agreement, where Elia has not violated its terms.

Beyond that, Elia's proffer statement that the government cites to the Court may not have the meaning that the government believes it has. It is inconsistent with the Section 3500 material for Lily. **Lily told the agents that Lenok "worked with ledgers which showed the total income."** If that is true, i.e., that Lenok had access to all the income information, then Elia's statement wherein he seemingly admitted that he did not personally give Lenok all the income information is not probative if he knew that Lily, his bookkeeper, did. In addition, there is no indication of this alleged statement by Lenok to Lily in Lily's 3500 material, and there is no 3500 material regarding Lenok.

6

In sum, the government's May 2 notice of a conspiracy involving Lenok and Lily is a suspicious trial stratagem to justify the admission of false hearsay testimony by a witness who is very willing and eager to fabricate testimony, and earn her 30% reward under I.R.C. Section 7623, as opposed to a theory arising from actual evidence in the grand jury or elsewhere.

The government says that Judge Brieant previously denied Elia's request for adverse information from IRS files pertaining to Lenok, in a ruling dated November 13, 2007, which ruling is law of the case. However, on November 13, 2007, Lenok was not an alleged unindicted coconspirator. The government first identified him as such in a letter on May 2, 2008, (Govt. Memorandum, Exhibit C, page 3), whereupon Elia, fairly promptly, renewed his request for the adverse information in letters to the government dated May 7 and May 13, 2008 (Exhibits A and B to Elia's Motion in Limine).[3]

---

[3] The government's response May 15 (Motion in Limine, Exhibit C) was not that Judge Brieant previously denied the motion, but rather that it was not relevant and that it would "take weeks and possibly longer" to locate the information as Lenok used his social security number on tax returns, rather than his paid preparer identification number. This response was a total contrivance. The IRS application for a Preparer Tax Identification Number ("PTIN")(Exhibit D to Motion in Limine) permits the use of SSN's to the same extent as PTIN's. Moreover, the government should not be permitted to use the time factor as its excuse for refusing to provide the requested information since Elia requested the information in the summer of 2007 and then again May 7, 2008, for the second time. That was a mere five days after the government identified Lenok as an alleged unindicted coconspirator (solely, in our view, for purposes of introducing false and unreliable evidence through Lily, and through Federal Rule of Evidence 801(d)(2)(E)).

The government's objection to providing the Lenok audit information based on lack of relevance also is wrong. See Fed. R. Evid. 806.

**Foreign Bank Accounts**

The government wants to argue that Elia is guilty of Counts 25-28 (charging that he willfully subscribed to materially false tax returns, in violation of I.R.C. Section 7206(1)) because he failed to disclose on his tax returns for 1999-2002 that he had control over foreign bank accounts. (Memorandum at 11.) **The government paraphrases those counts inaccurately. Counts 25-28 charge Elia with willfully subscribing to tax returns that were materially false because they "did not report corporate cash receipts *** and did not report income he received ***." There is not a word about failure to report control over foreign bank accounts.**

Rather than oppose Elia's motion in limine, which seeks to preclude evidence of foreign bank accounts on evidentiary grounds (Rules 401-404(b)), the government seeks to justify the admissibility of this evidence primarily on the alleged basis that the evidence proves the charges in the indictment. It does not.

The government's back-up arguments also are not persuasive. In an unsupported conclusion, the government says that it is highly probative proof of his scheme to conceal his income and to evade the payment and collection of his taxes. However, the government once again reverts to its recurring fallacious reasoning; it shows no connection between cash from the stores that allegedly was diverted to cash in the Israeli bank accounts that Elia allegedly "maintained in the names of others." There is no evidence whatsoever that the Israeli bank balances originated from unreported, untaxed cash taken out of stores in Westchester.

There is no evidence whatsoever that Elia "maintained the accounts in the names of others" as opposed to his family in Israel maintaining joint accounts. There is no

evidence whatsoever as to the origin of the Israeli bank balances and the dates of the deposits. There is no evidence that Elia's Israeli relatives did not earn the money and make the deposits.

The government refers to "bank records that show Elia's transfer of substantial sums of money to a bank account in Israel." (Govt. Memorandum at 12.) We believe that this refers to the account Elia maintained in his name and in his brother, Samyr's, name at Charles Schwab. We have already shown the government in our pre-trial motion to suppress evidence what it has known for years, yet still refuses to disclose to the Court: no cash was deposited to the Charles Schwab account. Elia's name appears openly on the account. Any transfer of money from the Schwab account in the U.S. to a bank in Israel is not probative of diverted cash or of concealment. It is not diverted cash because no cash ever was deposited to the Schwab account. It is not concealment because the names of both Yehezkel Elia and Samyr Elia appear on the account.

The government admits through its refusal to respond that (a) it possesses no evidence that these accounts were funded by cash diverted from Elia's stores, and (b) there is a likelihood that these balances were funded by Israeli relatives with income or savings from Israel.

**Elia's Personal Expenditures**

The government maintains that its proof of personal expenditures is "highly relevant proof" because it is "inconsistent with the specious defenses that Elia appears to want to advance." (Govt. Memorandum at 14.) First, Elia does not want to advance specious defenses. As of this writing, Elia's only defense that he wants to advance is that the government is unable to prove each and every element of each and every count

beyond a reasonable doubt. The defense has no idea of anything it ever said or wrote that would warrant a charge that it intends to advance specious defenses, or any defenses for that matter. The government has often relied on unsupported rhetoric and hyperbole in its writings in this case; this accusation is the quintessential example of such unsupported rhetoric that the defense cannot disregard.[4/]

The government's argument, once again, relies on the assumption that the personal expenditures were derived from cash that Elia diverted from his stores and that it "provides proof that he was, in fact, making money during the tax years ...." (Govt. Memorandum at 14.) It does not prove that at all. The government admits, through its silence, that Elia is correct in his arguments that the government is unable to negate nontaxable sources of income, such as savings from prior years. There are explanations for a 50-year old business-person spending money that are just as consistent with innocence as they are with guilt. The government's blinders prevent it from seeing anything but the alleged fact that personal expenditures equate with diverted cash. That is true in cases where the government has conducted a thorough investigation to show that there are no nontaxable sources of income from which personal expenditures may have been funded, *see, United States* v. *Eng*, 971 F.2d 854, 856 (2d Cir. 1982); *United States* v. *Bianco*, 534 F.2d 501 (2d Cir.), *cert. denied*, 429 U.S.822 (1976), but it

---

[4/] The government's unsupported rhetoric also contrasts with the defense's effort to write in a restrained tone, such as in its characterizations of the government's last-minute efforts to claim that Lenok and Lily are unindicted coconspirators where the conspiracy count involves Final Touch only. It could be said that "specious" comes closer to characterizing that claim than it does to the defenses to be raised in behalf of Elia.

is not necessarily true where, as here, it appears (from the government's silence) that the government did not conduct such an investigation and where the expenses are actually rather modest. By the government's recurring reasoning, even absent an investigation to negate nontaxable sources of income, the mere existence of large sums of cash leads only to one conclusion, i.e., that it must have been acquired as an income item, and in the years that the government claims it was acquired as an income item.

Here, a further defect in the government's reasoning is that the personal expenditures are too modest to have any probative value. Combined with the fact that there is no evidence to exclude (or even diminish) the possibility that the expenses arose from earlier years' income or savings or from other sources that are not taxable, the evidence of personal expenditures ought to be excluded.

**Unsubstantiated Tax Figures**

The government argues that Elia should be precluded from offering unsubstantiated tax figures. (Govt. Memorandum at 20-21.) Elia agrees that both he and the government should be precluded from offering unsubstantiated tax figures. The government has possessed the records it seized from Elia and the grand jury records for years. Elia has possessed a complete set for only a few months. Elia's accountants have been working diligently, and in the face of unnecessary obstacles from the prosecutor, to present substantiated tax figures.

**The Subpoena for Bernard Katz's Records**

The government says in a letter to the Court dated June 2, 2008, that it wants Katz to deliver records regarding an IRS audit that took place in 1998 and 1999 pertaining to the 1994 tax year, files pertaining to the border stop, and property records. As to the first two, the government's argument essentially is that Katz is lying in his denials that he possesses certain records. The government says "it strains imagination to believe that Katz and/or counsel do not have ready access to IRS tax audit files" and "it is inconceivable that neither Katz nor counsel has ready access to these files" (Letter at 2). However, to paraphrase the government in regard to Lily's embezzlements, the government has refused to provide any supporting details about its alleged suspicion that Katz is lying and yet continues to insist, based on its mere "suspicion", that Katz divulge information that he has sworn he does not possess. (Govt. Memorandum at 9-10.)

The government has not said why any of the records in issue are relevant to the years in the indictment. (The relevance of the Customs stop to the years in the indictment is self-evident.) We believe that records pertaining to the 1994 tax audit are irrelevant and inadmissible and are a further manifestation of the government's eleventh hour desperate search for other crimes, wrongs and bad acts, and we believe that the evidence pertaining to the Harding Avenue and Battle Avenue properties involves sales that occurred after the tax years in the indictment and that such evidence will not be admissible in any event.

The government admits (through its silence) that it did not comply with the Court's May 2 deadline to turn over evidence. It served alleged Rule 404(b) evidence upon Elia's counsel for delivery on May 28, May 29 and today, June 2. These

12

subpoenas, which were served May 21 and May 29 are a desperate "fishing expedition" for any dirt that the government might be able to determine on the eve of trial to distract the jury from focusing on the charges contained in the indictment and to distract Katz, Genuth and counsel from focusing on trial preparation.

The government possesses no sense of proportion. On the one hand, it uses as an excuse for refusing to produce audit records pertaining to Lenok's clients the fact that compliance would be burdensome. On the other hand, it demands that the defense drop all other business to conduct a search for evidence that the government wants to use to prove uncharged conduct on the eve of trial and long after the expiration of the deadline for disclosing its evidence to the defense, as well as its Rule 404(b) notices. Without wanting to appear presumptuous, the defense suggests that the Court might well exclude evidence designed to build a last minute Rule 404(b) case. Balancing the likelihood that any such evidence exists against the burden on the defense to identify it, locate it, produce it, wait for the government to assimilate it, wait for the government to notify the defense of its intent to use it, all in the week before trial, the equities are on the side of quashing the subpoena. When adding to this balancing, the likelihood that the Court might exclude the evidence in any event, the subpoena certainly ought to be quashed.

## CONCLUSION

Based upon the foregoing, the government's motions for pre-trial rulings on the admissibility of Elia's proffer statements and on the admissibility of alleged other crimes, wrongs and bad acts ought to be denied in all respects, and Elia's motion in limine ought to be granted. Elia's motion to quash the subpoenas served upon Bernard Katz on May 21 and May 29 also ought to be granted.

Respectfully submitted,

Jared J. Scharf
1025 Westchester Avenue
White Plains, New York 10604
(914) 682-9777

Attorney for Defendant
Yehezkel Elia

Dated:  White Plains, New York
        June 3, 2008

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA,

        v.                                      07 Cr. 543 (KMK)

YEHEZKEL ELIA and                      **AFFIDAVIT OF SERVICE**
DAVID ELYAHO,

            Defendants.
-------------------------------------------------------x

STATE OF NEW YORK         )
COUNTY OF WESTCHESTER  ) ss:

    CHRISTINA A. OGANDO, being duly sworn, deposes and says:

    1. I am not a party to this action and I am over the age of 18.

    2. On June 3, 2008, I served a true copy of the enclosed Memorandum of Law in Behalf of Defendant Yehezkel Elia in Reply to Government's Opposition to Defendant's Motion in Limine and Government's Motion to Preclude Unsubstantiated Tax Calculations, via In Hand Delivery to the following person at the following address:

        Cynthia Dunne
        Assistant United States Attorney
        United States Attorney's Office
        300 Quarropas Street
        White Plains, New York 10601

and via First class mail to the following person at the following address:

        Joseph A. Vita, Esq.
        327 Irving Avenue
        Port Chester, New York 10573

                                                          CHRISTINA A. OGANDO

Sworn to before me on this
3rd day of June, 2008

_____
Notary Public

                                             **KATHERINE SIMICEVIC**
                                             Notary Public, State of New York
                                             No. 4956357
                                             Qualified in Westchester County
                                             Commission Expires September 18, 2009