# JARED J. SCHARF
ATTORNEY AT LAW
1025 WESTCHESTER AVENUE · SUITE 305
WHITE PLAINS, NEW YORK 10604
(914) 682-9777

JARED J. SCHARF

ADAM L. SCHARF*

*NY, NJ BARS

**MEMO ENDORSED**

June 11, 2008

VIA TELECOPIER 390-4152

Honorable Kenneth M. Karas
United States District Judge
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

    Re:    **United States v. Elia**
            *Docket No. 07 Cr. 543 (KMK)*

Dear Judge Karas:

    The defense writes this letter, first, to request permission to raise new issues at the conference to be held later today and, second, to inform the Court and counsel of these issues.

**Quash Subpoena Served on Sneakermania, Inc.**

    First, the defense will seek to quash a trial subpoena that the government served upon Sneakermania, Inc. That trial subpoena would require Sneakermania, Inc. to produce "Any and all security camera recordings, tapes, digital images or photographs from the Sneakermania retail store" during 2002. The defense had previously written in a memorandum filed with the court, "a security camera shows Lily removing cash from the cash register and then breaking into a desk drawer in one of Elia's stores on December 29, 2002." Memorandum of Law in Behalf of Defendant Yehezkel Elia in Response to Government's Motion in Limine, May 30, 2008, at 8. The government then telecopied the subpoena to me on June 3, 2008. The defense would like an opportunity to argue this issue verbally.

Honorable Kenneth M. Karas
June 11, 2008          Page 2

**Late Compliance With Court's Disclosure Order**

The second issue we would like to address pertains to the exclusion of government exhibits that have been produced (and that continue to be produced) in an untimely manner. We have been receiving on a steady basis a virtual tidal wave of new exhibits. The Court ordered on March 28 that all marked exhibits be delivered to the defense on or before May 2. On May 2, we received a disc containing thousands of government exhibits. On May 27, the government began a process of serving upon us additional items that it claimed it had received recently. This material arrived too late to be included in our motions in limine. It also created a burden upon the defense in terms of trial preparation.

The government informed us today (June 11) that it intends to serve a new disc containing new exhibits, as well as replacement exhibits in lieu of exhibits contained on the May 2 disc. We have not yet received the new exhibits, and, therefore, cannot determine the extent of prejudice to the defense arising from this violation of the Court's March 28 Order. If the new material is massive and replaces a large portion of the material we have reviewed on the May 2 disc and the material we have received between May 28 and today, we will seek to preclude these untimely-served new exhibits. We already have spent enormous amounts of time organizing, evaluating and determining whether to stipulate to the authenticity of thousands of government exhibits. That process already has diminished our ability to prepare for trial. We do not possess the government's enormous resources. To make us begin this process again would seriously impair our trial preparation.

This tactic is similar to a tactic Ms. Dunne employed prior to indictment, when we requested access to the records seized in the search. After much delay, Ms. Dunne provided us copies of the search material, at great photocopying cost to Mr. Elia. Our accountant reviewed these items for the purpose of enabling us to prove a lesser tax loss than that demanded by the government for plea purposes. What the government did not inform us at that time was that the search and seizure invoices comprised far from a full set of purchase invoices. Our accountant's enormous efforts were wasted, and the entire process had to be started over again in November, 2007, after we received the invoices from the grand jury subpoenas, as well as the invoices from the search and seizure, and, even then, that was not a full set.

Ms. Dunne did not inform us prior to indictment, when she delivered the search and seizure items, that it was an incomplete set and that many more invoices were obtained by the grand jury pursuant to subpoena, yet she allowed us to analyze the search invoices so we could prove to her that the tax loss figures in the proposed plea were excessive, in effect causing us to perform an exercise in futility.

Honorable Kenneth M. Karas
June 11, 2008                     Page 3

    We are extremely upset at, as well as prejudiced by, the government's apparent tactic of giving us tremendous work to do and then making all that work unnecessary by producing new material later. This is not the first time Ms. Dunne has employed this tactic in our dealings. In a previous case, she continuously resisted my requests for access to items seized from my client, prolonging the process as much as possible by raising a series of obstacles and hurdles. Finally, when it became clear she would not provide us access to our seized material, even after we complied with all her requirements, we filed a motion pursuant to Rule 41(e), at great expense to the client. Ms. Dunne did not oppose our motion. When we arrived to argue the motion, before Judge Yanthis, she consented. (After the hearing before Judge Yanthis, Ms. Dunne proceeded to raise new obstacles.) The procedure I am now encountering seems to be indicative of a strategy of attempting to wear down the opposition by creating work for it to do that is rendered unnecessary based on decoys and diversions.

    We received permission from Dawn of your Honor's chambers to send this letter by FAX. The timing of the transmission is due to our wait to receive permission.

Respectfully,

Jared J. Scharf

cc: Cynthia K. Dunne, Esq.
    Joseph A. Vita, Esq.

*The Clerk of Court is respectfully requested to docket this letter.*

SO ORDERED
KENNETH M. KARAS U.S.D.J.
6/17/08