UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

        v.                                        07 Cr. 543 (KMK)

YEHEZKEL ELIA and
DAVID ELYAHO,

        Defendants.
-------------------------------------------------------x


# MEMORANDUM OF LAW IN BEHALF OF DEFENDANT YEHEZKEL ELIA IN SUPPORT OF MOTION FOR NEW TRIAL AND FOR JUDGMENT OF ACQUITTAL


JARED J. SCHARF
ATTORNEY AT LAW
1025 WESTCHESTER AVENUE | SUITE 305
WHITE PLAINS, NEW YORK 10604
(914) 682-9777

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNITED STATES OF AMERICA

        v.                                          07 Cr. 543 (KMK)

YEHEZKEL ELIA and
DAVID ELYAHO,

                      Defendants.
------------------------------------------------------x

## MEMORANDUM OF LAW IN BEHALF OF DEFENDANT
## YEHEZKEL ELIA IN SUPPORT OF MOTION FOR NEW TRIAL
## AND FOR JUDGMENT OF ACQUITTAL

Defendant Yehezkel Elia respectfully submits this memorandum of law in support of his motion for a new trial pursuant to Rule 33, Federal Rules of Criminal Procedure and for renewal of his motion for judgment of acquittal pursuant to Rule 29.

**Statement of the Facts:**

The jury was properly instructed: (a) that the government does not have to prove the exact amount of taxes owed during the relevant years or that the defendant attempted to evade or defeat payment of all the taxes from those time periods; (b) instead, the government need only prove that the amount owed from any one of those years was "substantial"; (c) in order to prove that the defendant received "substantial" additional income the government has introduced evidence of cash revenues of the Elia corporations that were not deposited into the corporate bank accounts or proof of corporate diversions. (Transcript at 1820.)

No precise definition of "substantial" was given and the concept of an additional tax was equated with undeposited sales, as opposed to undeposited sales net of purchases for which Elia did not receive credit. (Tr. at 1820-1821)

Elia does not dispute that the government proved that cash revenues were not all deposited into the corporate bank accounts. (Hereafter "the sales side" or "the income side.") Elia does dispute that the sales side alone may be equated with a substantial additional tax due and owing. Elia's defense was that he reported these undeposited sales revenues to his income tax return preparer, and, therefore, had no willful intent. Elia's defense also was that he had additional purchases that he paid using the undeposited sales, which offset (in whole or in part) the undeposited sales, and that the government failed to prove these purchases because numerous invoices apparently were missing from the seized records (see, Transcript at 542-545, 616-622, 655, 668) and because the government failed to serve grand jury subpoenas upon the majority of Elia's vendors/suppliers to obtain the missing invoices. (Transcript at 1201-1204, 1266, 1273.) Thus, a crucial issue at the trial was proof of purchases (hereafter occasionally "the purchase side" or "the expense side"), as sales less purchases (or cost of goods sold) equals gross income. The court's focus on the sales side in the jury instructions required equivalent attention to purchases. Yet none was given.

Elia maintains that given the permissive (to the government) definition of "substantial" additional tax, as above, the verdict does not imply a finding of an overwhelming tax liability or of a tax liability in any given amount. The verdict implies no more than the tax deficiency amount referred to in the instruction, i.e., the deficiency that arises from the undefined "substantial income." (Tr. at 1821.)

Because the tax deficiency finding implied by the jury's verdict is possibly minimal (just enough to meet the threshold of "substantial", a concept that was not defined in the jury instruction), and because it was established beyond doubt that an

indeterminate amount of Elia's corporations' invoices were missing and that the government made no effort to acquire these missing invoices (Transcript at 542-545, 616-622, 655, 668, 1201-1204, 1266, 1273), any amount of uncredited purchases would have been crucial in that it would have kept the jury from concluding that there was a "substantial additional tax due and owing." Accounts payable probably would have turned the tide and led the jury <u>not</u> to conclude beyond a reasonable doubt that there was a substantial additional tax due and owing.

The jury thus based its finding that there was a substantial additional tax due and owing on omitted sales, without regard to purchases and without regard to further purchases that would be required to be credited to Elia's corporations based on the accrual method of accounting. The jury certainly had to believe from the government's own witnesses that there were also omitted purchases for which invoices were missing. A properly instructed jury likely would have concluded that the accounts payable made the difference between proof beyond a reasonable doubt of an additional tax due and owing and lack of such proof. However, without an instruction on accrual method of accounting, the jury was prevented from considering a crucial component that would have diminished omitted income to a point below substantial or to zero.

The difference that would have reduced the additional tax to an amount below the amorphous concept of "substantial" is represented by the accounts payable. However, government summary witness Stamm testified that he did not give Elia credit for accounts payable as he determined purchases based on Elia's corporations' actual <u>payments</u>. (Transcript at 1266, 1273.) However, on the accrual method of accounting, Elia is entitled to credit for purchases his corporations made for which he did not make

3

payments during that same fiscal year. I.R.C. Section 461(a); Treasury Regulations Section 1.461-1(a)(2).

Stamm did not give Elia credit for unpaid purchases, such credit is required under the accrual method of accounting. Thus, the Court was required to instruct the jury on the accrual method of accounting as requested by the defense, if there was evidence that Elia's corporations were on that method of accounting.

Elia submitted the following proposed Jury Instructions:

**Method of Accounting**

Taxable income is computed by using the same method of accounting that the taxpayer used to compute his/her income, as long as such accounting method clearly reflects income. In this case, the defendant reported taxable income and deductible expenses on the accrual method of accounting.
Under the accrual method of accounting, income is to be included in the taxable year when all events have occurred which fix the right to receive such income and the amount of the income can be determined with reasonable accuracy. Similarly, deductions are allowable for the taxable year in which all the events have occurred which establish the fact of liability giving rise to such deduction and the amount of the deduction can be determined with reasonable accuracy. When income is actually received or an expense is actually paid is irrelevant in the accrual method of accounting.

United States Attorney's Manual, Chapter 9, Criminal Tax Manual, Jury Instructions,
Instruction No. 195.

26 United States Code (Internal Revenue Code) Sections 446, 461(a)
Treasury Regulations on Income Tax, Sec 1.461-1(a)(2)  (26 C.F.R.)


**Accrual Method of Accounting Required for Taxpayers that Use Inventories**

Sneaker Mania, Pizza Mania and Final Touch reported inventories. The use of inventories in computing income requires the accrual method of accounting in determining the cost of goods sold if a substantial part of the purchases is made on credit.

4

> *Boynton* v. *Pedrick*, 136 F. Supp. 888,891 (S.D.N.Y. 1954);
> *Galeridge Construction, Inc.* v. *Commissioner*, T.C. Memo 1997-240, 1997 WL 269574, at 10 (U.S. Tax Court 1997);
> *Golden Gate Litho* v. *Commissioner*, T.C. Memo 1998-184, 1998 WL 246411, *6 (U.S. Tax Court 1998).

The only reason not to give the requested instruction would have been if there were no evidence that Elia's corporations were on that method of accounting. However, the overwhelming evidence was that the corporations were on the accrual method. Each and every tax return included a check mark next to the box for accrual method. Each page of each general ledger bore the notation "Accrual basis." Most of the tax returns included an analysis of opening and closing inventory which only is included by accrual basis taxpayers.

The government resisted admitting that Elia's corporations were on the accrual method. Government expert witness Stamm testified repeatedly that he used the method that Elia's accountant used, but Stamm refused to state whether that method was accrual or cash. (Transcript at 1218-1220.)

Nevertheless, Stamm did, in fact, admit at other times that the method used by Elia's corporations was accrual. (Transcript at 1217 (line 1), 1223 (line 5).) Yet at other times, Stamm insisted that the tax returns "looked like" they were prepared on the cash method. (Transcript at 1217 (line 8), 1219 (lines 2 and 20), 1224 (line 8), 1232 (line 14), 1237 (line 6), 1240 (line 4), 1243 (line 19)). Stamm never testified that Elia's corporations actually were on the cash method of accounting.

Any justification for Stamm's "looked like" testimony is irrelevant to the purchase side. Stamm admitted that the only reason supporting his belief that the tax return looks like the cash method was limited to the income side. He testified that a

5

merchant who sells a product and gets paid at the time of the sale is required to report income as of that time whether he is on the cash or the accrual method of accounting. On the <u>income side,</u> the two methods "look alike" if payment for the merchandise is made at the time of the sale. (Tr. at 1228-1229.) However, Stamm admitted that it did not appear to him that "Paul Lenok was treating the <u>expense side</u> as anything other than accrual method of accounting." (Tr. at 1232 (lines 7-10).) He repeated that he has no reason to believe that Lenok did not use the accrual method of accounting on the expense side. (Transcript at 1236 (lines 3-6).)

Accordingly, the facts clearly indicate (a) that Elia presented evidence in the form of government exhibits (corporate tax returns, general ledgers) that overwhelmingly supported his theory that his corporations were accrual method of accounting taxpayers, and (b) the government's opposition to this argument was limited to the income side, where it was irrelevant; the government did not attempt to contradict Elia's contention that his corporations were on the accrual method on the expense side.[1]

---

[1] Even if the government had attempted to challenge the fact that Elia reported expenses on the accrual method of accounting, Elia's evidence to the contrary is sufficient to warrant that the jury be instructed as he requested. See Argument, infra.

6

Since Elia's corporations were, indeed, on the accrual method of accounting, Elia was clearly entitled to an instruction that the government is required, when reconstructing a defendant's income, to use the same method of accounting as the method used by the defendant. Elia also was entitled to an instruction that that method entitles a taxpayer to deduct purchases in the year when all events have occurred that establish the liability, regardless of whether payment is actually made during that year and that when "an expense is actually paid is irrelevant in the accrual method of accounting." Elia also was entitled to an instruction that the nature of his business requires that he use the accrual method.

Because such instructions were not given, the jury was not required to take into consideration accounts payable, a concept that only applies under the accrual method of accounting. Therefore, the jury's conclusion that there was a substantial additional tax due and owing is fatally tainted as the jury was not informed that it was required to consider accounts payable, thereby preventing the jury from considering unpaid purchases in determining whether there was a substantial additional tax due and owing.

The court heard the parties at length on the issue of whether the jury should be instructed that the government is required to use the taxpayer's method of accounting. (Transcript at 1408-1413.) Elia argued that such instructions are required. (Transcript at 1410-1413, 1439.) The court initially included Elia's proposed instruction (Exhibit B) in its draft Jury Charge. But then the court stated that it believed that if the defendants did not use the accrual method of accounting "it doesn't matter." (Transcript at 1440.) However, if defendant did use the accrual method, it does matter. The court did not rule

on the requested instruction (Exhibit B) at the time, eventually deleted it from the charge, and never gave it to the jury.

In the actual charge to the jury, the court did not instruct the jury on method of accounting other than to inform the jury of Elia's theory of the case, which included a passing reference to Elia's contention that the government employed the wrong method of accounting in reconstructing his income. (Transcript at 1827-1828.) The court did not instruct the jury as to the correct method of accounting. Elia objected to the proposed charge (Transcript at 1413) and renewed that objection following the actual charge. (Transcript at 1861.) [2]

Based on the facts of this case in particular, method of accounting was crucial. There was abundant evidence in the form of admissions pried out of a strongly biased and reluctant government witness that invoices were missing from the search and from her purchase journals. Many of those invoices represent the accounts receivable for which Elia did not receive credit. Lily initially testified repeatedly and assertively that no purchases were left out of her purchase journals, GX 100, 101, and 102, and that those journals were accurate. (Transcript at 470 (line 24), 471 (line 2), 479 (line 6), 479 (line 13), 512 (line 22), 525 (line 20) ("I didn't leave anything out"), 533 (line 18), 535 (line 7), 535 (line 21).) When it was proved conclusively that hundreds of invoices, in fact, were omitted (Transcript at 542 (line 7), 543 (line 17), 545 (line 22)), and otherwise not credited (Transcript at 1252-1257), Lily amended her testimony that the purchase journals are accurate, and insisted that they were never meant to be accurate (Transcript

---

[2] Not only did Elia use the accrual method of accounting, but, in fact, no other method of accounting is permitted for such a taxpayer. (Exhibit C.)

at 616-621), admitted that she did not inform anybody in the government that the journal was not accurate (Transcript at 622) because no one asked (Transcript at 668), and admitted that she did not give the accountant accurate purchase figures. (Transcript at 655.) Stamm admitted that no one in the government asked Lily if her purchase journals were accurate (Transcript at 1174, 1265), but he relied on them in part in any event. (Transcript at 1171.) Stamm also admitted that no one in the government made any effort to obtain the invoices missing from the search and the invoices missing from Lily's purchase journals by serving grand jury subpoenas upon the vendors, except for a handful (six out of forty) of vendors. (Transcript at 1266.) The government was lacking numerous invoices, according to Stamm. (Transcript at 1201-1204.) Therefore, the government relied on <u>payments</u> by Elia's corporations in order to prove purchases. (Transcript at 1266, 1273.) However, actual payments are "irrelevant" in the accrual method of accounting. Treasury Regulations Section 1.461-1(a)(2). Thus, the government did not rely on Elia's corporations' accounts payable, as required on the accrual method of accounting, as it lacked the essential evidence that it needed in order to prove the latter. Without proof of accounts payable, there was no means of proving a substantial additional tax due and owing.

    In these circumstances, Elia submitted far more than sufficient evidence through the government's own witnesses and exhibits to be entitled to a jury instruction on method of accounting, provided the jury instruction properly reflected the law. Even if there had been any evidentiary support for the government's attempt to raise a question of fact as to what method of accounting Elia's corporations used, which there was not, Elia showed enough evidence to warrant the instructions on method of accounting. Had the

jury been properly instructed, it probably would not have found that the government proved a substantial additional tax due and owing and a material false statement beyond a reasonable doubt. The jury instruction Elia requested was a correct statement of the law.

## ARGUMENT

### POINT ONE

### THE EVIDENCE OF SUBSTANTIAL TAX DUE AND OWING AND OF A MATERIAL FALSE STATEMENT WAS INSUFFICIENT AS A MATTER OF LAW AND ELIA'S MOTION FOR JUDGMENT OF ACQUITTAL OUGHT TO BE GRANTED

The usual standard for review of a District Court's denial of a motion for judgment of acquittal pursuant to Rule 29, Fed.R.Crim.P., is that a conviction will be sustained where "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson* v. *Virginia*, 443 U.S. 307, 319 (1979). However, in a case where the defendant alleges that the evidence, even if true, is not legally sufficient to support the conviction, appellate courts review such a claim *de novo*. *United States* v. *Leslie*, 103 F.3d 1093, 1100 (2d Cir. 1997).

In this case, the evidence of purchases could not have been sufficient as a matter of law absent evidence of accounts payable (as-yet unpaid purchases). The government's justification for omitting accounts payable from its computation of purchases, and, therefore, from its proof of a substantial additional tax due and owing and material false statement, relies on a series of practiced answers suggesting that "it did not look like" Elia's corporations were on the accrual method of accounting. This was an argument made out of necessity, not logic or evidence. The undisputed evidence was that Elia's corporations certainly were on the accrual method of accounting on the expense side

(and, therefore, were entitled to receive credit for unpaid purchases) and that hundreds of invoices proving unpaid purchases were missing.

The court has rejected Elia's argument previously by crediting Stamm's testimony that "it looked like" the corporations used the cash method of accounting. However, in the face of consistent and overwhelming documentary evidence to the contrary, this premise must fail. The notations on every page of the general ledger, the check-offs in each tax return for each corporation, the use of opening and closing inventory in computing purchases, all proven by government exhibits, all demonstrate conclusively that the corporations were, in fact, on the accrual method. Further, Stamm's testimony that "it looks like" the cash method was based on a rationale that pertains only to the income side, and certainly could not justify treating the expense side on the cash method of accounting by giving credit only for paid purchases and withholding credit for accounts payable, as required on the accrual method.

The court's basis for rejecting this argument at trial was a misunderstanding of Stamm's testimony. Stamm did admit, two times, that he has no reason to believe that Lenok, the accountant, did not use the accrual method <u>on the expense side</u>. (Transcript at 1232, 1236.)

In addition, the law does not just permit, but actually requires, that the accrual method of accounting be used by corporations that have inventories, such as Elia's corporations. *Boynton* v. *Pedrick*, 136 F. Supp. 888, 891 (S.D.N.Y. 1954); *Galeridge Construction, Inc.* v. *Commissioner*, T.C. Memo 1997-240, 1997 WL 269574, at 10 (U.S. Tax Court 1997); *Golden Gate Litho* v. *Commissioner*, T.C. Memo 1998-184, 1998 WL 246411, *6 (U.S. Tax Court 1998).

Because the corporations were on the accrual method of accounting, purchases could not be determined without evidence of accounts payable. The latter evidence was totally lacking. Without adequate evidence of purchases, there could be no proof of a substantial additional tax due and owing (Section 7201) or of a material false statement (Section 7206(1)).[3]

## POINT TWO

**THE COURT'S FAILURE TO INSTRUCT THE JURY ON THE ACCRUAL METHOD OF ACCOUNTING AND ON ITS REQUIRED USE IN THIS CASE PREVENTED THE JURY FROM MAKING A PROPER DETERMINATION OF THE ESSENTIAL ELEMENT OF A SUBSTANTIAL ADDITIONAL TAX DUE AND OWING AND, THEREFORE, REQUIRES A NEW TRIAL**

**A. Standard for New Trial:**

Under Rule 33(a), Federal Rules of Criminal Procedure, a court may vacate a judgment and grant a new trial if the interest of justice so requires.

A trial court has broad discretion to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Ferguson,* 246 F.3d 129, 133, 134 (2d Cir.2001) (quoting *United States v. Sanchez,* 969 F.2d 1409, 1413 (2d Cir.1992)). In deciding the motion the district court must examine the entire case and may weigh the evidence and the credibility of witnesses, but it must be careful not to "wholly usurp" the role of the jury. *United States v. Autuori,* 212 F.3d 105, 120 (2d Cir.2000). Rule 33 authority should only be used "sparingly" and in "the most extraordinary circumstances." *Sanchez,* 969 F.2d at 1414; *United States* v. *Schesinger,*

---

[3] In addition, there was no special verdict indicating that the jury was unanimous on an alternative theory to support the Section 7206(1) counts.

438 76, 100 (E.D.N.Y. 2006). The standard of review for a district court's grant of a new trial is abuse of discretion. *See United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir.2001).

### B. Elia is Entitled to a New Trial Because the Court Erred When it Declined to Instruct the Jury on the Government's Duty to Prove Income Using the Accrual Method of Accounting

"A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *United States v. Walsh*, 194 F.3d 37, 52 (2d Cir.1999) (internal quotation marks omitted). Even if a jury instruction is erroneous, however, vacatur is appropriate only if the error was prejudicial and not simply harmless. *See United States v. Torres*, 845 F.2d 1165, 1171 (2d Cir.1988).

In this case, the court's instruction on substantial additional tax due and owing was erroneous absent an elaboration on the effect of purchases (cost of goods sold) in determining substantial additional tax due and owing, and, in particular, a further elaboration on accounts payable as a component of purchases for accrual method of accounting taxpayers. Absent such instructions on purchases and accounts payable, on the facts of this case, the harm was palpable.

Put another way, the defense's requests for a jury instructions on the accrual method of accounting should have been granted. In challenging a conviction on the basis of a district court's failure to give a requested instruction, a defendant "has the burden of showing that the requested charge accurately represented the law in every respect." *United States v. Dove,* 916 F.2d 41, 45 (2d Cir.1990); *see also United States v. Gonzalez,* 407 F.3d 118, 122 (2d Cir.2005). The defendant must also show that the

13

proposed instruction represented a theory of defense with a basis in the record that would lead to acquittal and that the defense theory was not effectively presented elsewhere in the charge. *See United States v. Allen,* 127 F.3d 260, 265 (2d Cir.1997).

The proposed instructions on method of accounting met this standard. The record supported them, as there was more than sufficient evidence to prove that Elia's corporations were on the accrual method and that they had inventories. The defense theory would have led to an acquittal, as Stamm only gave Elia credit for purchases that had been paid, whereas on the accrual method, Elia is entitled to credit for purchases that have not yet been paid. There was a fatal gap in the government's ability to prove these additional purchases as Lily's purchase journal, which she palmed off repeatedly as being reliable and accurate, ultimately was admittedly not reliable or accurate, and the government never attempted to obtain the missing invoices, and proceeded solely on the basis of "paid" purchases.

Lacking evidence to prove unpaid (accrued) purchases, the government was unable to prove a substantial additional tax on the accrual method. Thus, a properly instructed jury would have had to have returned a verdict of not guilty. Finally, the defense theory was not effectively presented elsewhere.

Title 26 United States Code (Internal Revenue Code) Section 446(a) provides that "Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." Elia plainly used the accrual method of accounting. Therefore, his corporations' income was required to be computed on that same method of accounting.

> Taxpayers may elect various methods of accounting for use on their income tax returns. Although a taxpayer's total taxable income over the

> long run should be the same regardless of the method of accounting selected, **in any given year a taxpayer on the accrual basis may have a substantially different amount of taxable income than if he had chosen the cash basis**. The purpose of a net worth computation is to check the accuracy of the amount of income reported by the taxpayer. Thus, if the taxable income reported on his return is correct, and if no errors creep into the asset, liability, and expenditure figures used to ascertain successive years' net worth, the income computed on the net worth basis and that reported on his tax return should be the same. This is possible only if the figures used in computing net worth are keyed to the taxpayer's method of accounting. If a taxpayer disregards his accounts payable in reporting income on his annual tax return, i.e., reports as a cash basis taxpayer, then the government in computing his net worth in order to check the income reported on his tax return must also disregard these amounts. Whether this computation reflects net worth as accountants define it, i.e., the excess of the value of assets over liabilities, is irrelevant, United States v. O'Connor, 273 F.2d 358, 361 (2 Cir. 1959), since the government is not seeking to determine the taxpayer's true worth but rather to verify the accuracy of his income tax return for a particular year. An examination of the defendant's tax returns and books of account discloses that he reported sales and purchases on the cash method of accounting, disregarding accounts payable for purchased overalls and uniforms. Therefore, the trial court correctly excluded proof of such payables in reconstructing his taxable income on the net worth method. See Clark v. United States, 211 F.2d 100, 105 (8 Cir. 1954), cert. denied, 348 U.S. 911, 75 S.Ct. 289, 99 L.Ed. 714 (1955); Scanlon v. United States, 223 F.2d 382, 389 (1 Cir. 1955); Leeby v. United States, 192 F.2d 331, 334 (8 Cir. 1951).

*United States* v. *Vardine*, 305 F.2d 60, 64 (2d Cir. 1962). (Emphasis added.) [4]

Elia was entitled to a jury instruction regarding the requirement that the accrual method be used and explaining that method as he presented sufficient evidence to warrant such an instruction. This remains true even if the court gives credit to Stamm's testimony that "it looked like" the cash method because it only looked like the cash method on the income side, where both methods yield the same result in the circumstances of this case. Nevertheless, regardless of Stamm's testimony, there was sufficient evidence in the

---

[4] Stamm admitted that the I.R.S. does not have the authority to change the taxpayer's method of accounting when performing an audit. Tr. 1220-1221.

15

record, in the form of government exhibits (tax returns, general ledgers), to require that the jury be instructed on the correct method of accounting. *United States v. Allen,* 127 F.3d 260, 265 (2d Cir.1997).

In fact, the court expressed its intention to give Elia's requested instruction. The court included the instruction (Exhibit B) in its initial draft Jury Charge. Then the court proposed to qualify the charge by prefacing it with, "If you find that defendant Yehezkel Elia *** used the accrual method of accounting...." (Transcript at 1412.) The only defense argument was that this qualifying language should have been omitted as there was no evidentiary support, in the defense's view, for any contrary finding. The defense requested the charge "the way it is." (Transcript at 1412, see 1410 - 1412.)  Thus, it clearly appeared that the court agreed to give the instruction requested by the defense to the effect that the government was required to use the accrual method of accounting if the jury finds that Elia used that method and explaining the method.   Ultimately, the court gave no instruction on method of accounting, qualified or not. The defense objected on the basis of the previous discussion. (Tr. at 1861.)

Finally, based on the authority cited with Elia's proposed jury instructions (see supra at 4-5, 11, 14), the proposed instructions accurately represented the law in every respect. [5]

---

[5] The government no doubt will place great emphasis on Elia's alleged acts of concealment, including alleged false statements to Customs, alleged concealed Israeli bank accounts, alleged false loan applications, alleged use of his brother's name to deceive, etc. All this "404(b) stuff" was offered and received for proof of intent only. It cannot prove the essential element of a substantial additional tax due and owing. As the Second Circuit has held, bad intentions alone are not punishable. The diversion of funds cannot constitute a criminal offense, despite criminal intent, if no taxes are due. *United States v. D'Agostino*, 145 F.3d 69, 73 (2d Cir. 1998); *see also Boulware v. United States*, ___ U.S. ___, 128 S. Ct. 1168 (March 2008).

## CONCLUSION

The court's failure to instruct the jury concerning the accrual method of accounting, as requested by the defense, prevented the jury from being able to consider accounts payable, and, therefore, from making a legally supportable finding on the essential element of an additional tax due and owing. Accordingly, the verdict ought to be vacated. Since the government possessed no evidence to prove purchases, the counts pursuant to Section 7201 ought to be dismissed. A new trial should be ordered as to the other counts.

Respectfully submitted,

Jared J. Scharf
1025 Westchester Avenue
White Plains, New York 10604
(914) 682-9777

Attorney for Defendant
    Yehezkel Elia

Dated:  White Plains, New York
        August 26, 2008