

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

**MEMO ENDORSED**

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 22, 2008

BY HAND

Honorable Kenneth M. Karas
United States District Judge
United States District Court
Southern District of New York
300 Quarropas Street, Room 533
White Plains, New York 10601

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____
```

Re: **United States v. Yehezkel Elia**
       **07 Cr. 543 (KMK)**

Dear Judge Karas:

The Government submits this letter in opposition to Yehezkel Elia's third application for bail pending his sentence, dated August 15, 2008, ("Elia's Third Bail Motion"). In this latest application, Elia seeks daily release from prison between 9a.m. and 7p.m. for two weeks, accompanied by armed guards from a private security firm. Elia further asserts that within two weeks, he and his attorneys will have collected financial information to supplement his prior bail application and support his release on bail pending sentencing. Just as he previously argued in an August 4, 2008 bail application, Elia claims that his daily supervision is necessary to transition the management of his businesses to his son, Jonathan Elia, and to attend to various business matters. The Court has denied Elia's previous bail applications on July 2 and August 11, 2008, concluding that Elia had not meet his burden under the relevant statute, 18 U.S.C. § 3143, to show, by clear and convincing evidence, that he is not a flight risk. While Elia's Third Bail Motion proposes a different set of conditions for a two-week period, he has once again failed to meet his burden to show he is not a flight risk. He presents no new facts. Accordingly, the Court should deny his application.

I.   **FACTS RELATING TO ELIA'S CURRENT APPLICATION**

Elia's counsel advised the Government that he intends to renew the bail application that this Court has already denied. Counsel also asked the Government to interview Elia's potential cosignors, which the Government agreed to do, in the interest of exploring whether a new application supplemented with information about the Elia family's assets could alleviate concerns that Elia is a flight risk. But the Government informed counsel that Elia and

Honorable Kenneth M. Karas
August 22, 2008
Page 2 of 6

his potential cosignors first needed to provide detailed information about each of their own assets and liabilities (which is standard information sought from all cosignors), as well as assets in the names of others (including Samyr Elia) that they control.

So far, the Government has not received any financial information from Elia or his cosignors, beyond what was set forth in Elia's Second Bail Motion. In fact, Elia presents no additional evidence in his Third Bail Motion about his assets or the assets of his cosignors, to address the concern that no bail package could ensure his appearance. Instead, he argues, as he did in his previous application, that his purported need to attend to various business matters warrants his release.[1] The only new fact that Elia offers in his Third Bail Motion, is his willingness to pay a private security firm, United Security Inc. ("USI"), to escort him out of prison each day and "guard" him as he moves about and does what he pleases between 9 a.m. and 7 p.m. each day.

Based on defense counsel's and USI's representation that the firm has supervised defendants on bail in the Southern and Eastern Districts of New York, the Government contacted USI and inquired about the types of security they have provided in other cases. USI advised the Government that for certain defendants who have been released on bail conditions that include home confinement, USI has provided 24-hour video surveillance and phone monitoring, and also accompanied defendants subject to home confinement outside the home when necessary for attorney and medical visits. USI has also, on occasion, escorted an incarcerated inmate outside of prison to attend a funeral or other one-time event that lasts a few hours and is confined to a specific location. USI has not ever provided the kind of supervision that Elia proposes in his bail application, where a defendant is not confined to home but is instead permitted to go to various places of his choosing. USI informed the Government that any such arrangement would require a driver and car provided by the defendant – USI is not equipped to transport a defendant from place to place.

---

[1] The Court should flatly reject Elia's claim that he needs to be released to prepare for a *Fatico* hearing in this case. Although Elia ultimately did not call an expert witness at the trial, Elia's accountants attended the entire trial and were clearly engaged with the issues, having produced, in the middle of the Revenue Agent Stamm's testimony, various lists of expenses and receipts to the Government that they claimed the Government calculations did not account for. During trial, these lists were the subject of cross, redirect, re-cross, and re-redirect by counsel. In addition, if preparation for a *Fatico* hearing required release, every convicted defendant whose sentencing warrants a *Fatico* hearing would be entitled to release pending his sentence.

Honorable Kenneth M. Karas
August 22, 2008
Page 3 of 6

## II.   ARGUMENT

### A.   Legal Standard

As set forth in the Government's August 8, 2008 letter, there is a presumption of in favor of detention following a defendant's conviction, pending sentence. 18 U.S.C. § 3143(a); *United States v. Abuhambra*, 389 F.3d 309, 320 (2d Cir. 2004). Unlike 18 U.S.C. § 3142, which governs pre-trial detention and release, Section 3143 "places the burden on the defendant to defeat that presumption; and it requires the defendant to carry that burden by clear and convincing evidence, not by a mere preponderance. Only if a defendant clears these high procedural hurdles is he entitled to release pending sentencing." *Abuhambra*, 389 F.3d at 320.

### B.   Discussion

As in his prior applications, Elia has not shown by clear and convincing evidence that he is not a flight risk, to overcome the statutory presumption for detention pending the imposition of his sentence. As set forth above, the only new information Elia's Third Bail Motion presents is a proposed security arrangement with USI for two weeks. This proposed arrangement does not show that Elia is not a flight risk.

Elia should not be released, where he has otherwise failed to show that he is not a flight risk, simply because he has the resources to construct a private "jail." In *United States v. Agnello*, 101 F.Supp. 2d 108 (E.D.N.Y. 2000), the defendant was detained based on dangerousness to the community. There, the district judge explained that she did not

> think a wealthy defendant is entitled to greater consideration in the making of a bail decision than a defendant of modest means. Just as Congress provided in the Bail Reform Act that the court 'may not impose a financial condition that results in the pretrial detention of the person,' Congress did not intend that a dangerous individual should be released because that individual was sufficiently affluent to be able to pay the cost of extravagant release conditions monitored by private security officers.

*Agnello*, 101 F.Supp.2d at 115, *citing*, 18 U.S.C. 3142(c) and *United States v. Patriarca*, 948 F.2d 789, 796 (1st Cir. 1991) (Senior Circuit Judge Hill, concurring dubitante) ("The ability of the defendant to pay should have nothing to do with the decision as to whether pretrial release conditions constitute the 'heroic measures beyond those which can fairly be said to have been within Congress's contemplation'") (quoting *United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990)). Similarly, in *United States v. Orena*, 986 F.2d 628, 631 (2d Cir. 1993), the Second Circuit reversed the District Court's bail order and remanded the defendant, noting that the bail conditions fashioned to include 24-hour surveillance by a private security firm were not "superior to detention for the purposes of the Bail Reform Act."

Honorable Kenneth M. Karas
August 22, 2008
Page 4 of 6

While these cases considered the impact of private security on a defendant's danger to the community, the same analysis applies when a defendant is detained based on risk of flight. In *Borodin v. Ashcroft*, 136 F.Supp.2d 125 (E.D.N.Y. 2001), the defendant was detained based on risk of flight pending a hearing on a request for his extradition. He proposed to be released to 24- hour home confinement with 24-hour surveillance and electronic monitoring. The District Court held, among other things, that it was

> contrary to underlying principles of detention and release on bail that individuals otherwise ineligible for release on bail should be able to buy their way out by constructing a private jail, policed by security guards not trained or ultimately accountable to the government, even if carefully selected. Even if the cost of surveillance is covered by Borodin, the government still incurs an added administrative burden in supervising the surveillance.

*Borodin v. Ashcroft*, 136 F.Supp. 2d at 134. In *Orena*, the Second Circuit similarly held that the Government should not have to bear the burden of replicating jail-like conditions. While Elia's proposed arrangement does not even confine him to his home and provide for monitoring of his communications (which would require Government review of surveillance recordings), it still imposes an extra burden on the Bureau of Prisons and the United States Marshal Service, which are required to follow a certain procedures whenever inmates enter and leave a prison facility.

Elia's proposal sharply contrasts with the bail conditions in *United States v. Sabhnani*, 493 F.3d 63 (2d Cir. 2007), a recent case where the Second Circuit ordered pre-trial release based in part on private security arrangements. First, before the *Sabhnani* defendants were released on bail, they produced approximately 15,000 pages of financial records disclosing various assets they controlled to address the concern that their significant wealth, and personal and professional connections around the world, made them a flight risk. Private security arrangements alone were insufficient to outweigh the risk of flight they presented and were no substitute for extensive financial disclosures that enabled the Court to assess their risk of flight in light of the restraints on their assets that were part of the bail package. Second, the conditions of home confinement in *Sabhnani* were far more restrictive than what Elia proposes. For example, the defendants in *Sabhnani* were confined to their home at virtually all times, which was guarded by private security personnel who controlled the exits and the home alarm system. The defendants were prohibited from conducting any business outside their home, and their telephone conversations and emails were monitored by the security firm. Even the defendants' children were searched upon entering the home for any notes or information they could be carrying on behalf of others and relaying to their parents. The bail conditions in *Sabhnani* make clear that the risk of flight created by access to wealth and international contacts extends to the defendant's communications with others who could assist in an escape or in moving the defendants' assets. Finally, as in nearly all cases where bail conditions include private security arrangements, *Sabhnani* involved pretrial release and detention, where it is the Government's burden, not the defendant's, to demonstrate by a preponderance of the evidence *both* that a

Honorable Kenneth M. Karas
August 22, 2008
Page 5 of 6

defendant presents a risk of flight and that no condition or combination of conditions can be imposed reasonably to assure his required attendance.[2] *See* 18 U.S.C. § 3142(e); *Sabhnani*, 493 F.3d at 74-75.

   As explained above in Part I, USI has never carried out the type of arrangement that Elia proposes. First, under Elia's proposal, he would *not* be confined to his home, but would instead be free to go anywhere he wishes in USI's custody each day for two weeks. Second, USI would not be able to monitor Elia's phone conversations and communications with others as it has done in other cases because (1) Elia would be outside of his home communicating with all sorts of people about which the Government has no information; and (2) as the evidence at trial showed, Elia can communicate in Hebrew, which USI security guards would not readily understand.[3]

   Moreover, USI guards are not law enforcement officers, and though Elia represents that they would be armed while accompanying him, the use of deadly force by any private citizen to stop an escape (particularly when the defendant himself poses no danger to the community) raises troubling questions. If the Court is at all inclined to release Elia to the "custody" of USI or any other private security firm, the Government respectfully requests that the Court directly question representatives from that firm about the viability of the proposed arrangements, their capacity to prevent escape, and the circumstances in which their security guards are authorized to use force (through guns or otherwise).

---

  [2] As discussed at greater length in the Government's August 8, 2008 letter, defendant Mahender Sabhnani was released pending sentence on conditions similar to his pre-trial bail conditions, for reasons that do not exist here, and also because his co-defendant wife's detention reduced his risk of flight.

  [3] The Government inquired whether USI could provide guards who do understand Hebrew and was informed that they would be unable to do so on such short notice.

Honorable Kenneth M. Karas
August 22, 2008
Page 6 of 6

## CONCLUSION

   For these reasons, the Government respectfully requests that the Court deny Elia's Third Bail Motion. The Government also requests that the Court docket this letter brief so that it is part of the official docket in this case.

              Respectfully submitted,
              MICHAEL J. GARCIA
              United States Attorney
              Southern District of New York

          By: /s/_____
            Cynthia K. Dunne
            Seetha Ramachandran
            Assistant United States Attorneys
            (914) 993-1930/(212) 637-2546

cc:  Stuart P. Slotnick, Esq.
    *(By email)*

    Jared Scharf, Esq.
    *(By email)*

*[Handwritten: The Clerk is respectfully requested to docket this letter.*

*So ordered.*

*[signature] KMK*
*8/28/08]*