UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

   v.            07 Cr. 543 (KMK)

YEHEZKEL ELIA and
DAVID ELYAHO,

     Defendants.
-------------------------------------------------------x


**MEMORANDUM OF LAW IN BEHALF OF DEFENDANT
YEHEZKEL ELIA IN REPLY TO GOVERNMENT
OPPOSITION AND IN FURTHER SUPPORT OF MOTION FOR
NEW TRIAL AND FOR JUDGMENT OF ACQUITTAL**


**JARED J. SCHARF**
ATTORNEY AT LAW
1025 WESTCHESTER AVENUE | SUITE 305
WHITE PLAINS, NEW YORK 10604
(914) 682-9777

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNITED STATES OF AMERICA

        v.                                        07 Cr. 543 (KMK)

YEHEZKEL ELIA and
DAVID ELYAHO,

                    Defendants.
------------------------------------------------------x

## MEMORANDUM OF LAW IN BEHALF OF DEFENDANT YEHEZKEL ELIA IN REPLY TO GOVERNMENT OPPOSITION AND IN FURTHER SUPPORT OF MOTION FOR NEW TRIAL AND FOR JUDGMENT OF ACQUITTAL

Defendant Yehezkel Elia respectfully submits this memorandum of law in reply to the government's opposition to his motion for new trial and for judgment of acquittal. Both motions may be dealt with in one discussion because if the requested jury instruction ought to have been given, as we argue in the motion for new trial, then the law must be such that the government's evidence of a substantial additional tax due and owing was insufficient.

ARGUMENT

THE GOVERNMENT'S OPPOSITION IS PREMISED ON
AN INCORRECT VIEW OF THE STANDARD BY WHICH
MOTIONS FOR NEW TRIAL BASED ON INADEQUATE JURY
INSTRUCTIONS ARE DETERMINED FOR WHICH REASON
ELIA'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR
A NEW TRIAL ARE RIGHTEOUS AND OUGHT TO BE
GRANTED

**A. The Government's Opposition Completely Disregards the Proper
Standard for Motions for New Trial Based on Failure to Instruct the
Jury in Accordance with a Written Request by the Defendant**

If the government had read Elia's motion (Elia's Memorandum at 13-14), it would have known the correct standard for granting a new trial on the basis of a court's refusal to give a jury instruction requested by the defense. That standard is that a defendant has the burden of showing:

1. That the requested charge accurately represented the law in every respect.

   *United States v. Dove,* 916 F.2d 41, 45 (2d Cir.1990); *see also United States v. Gonzalez,* 407 F.3d 118, 122 (2d Cir.2005).

2. That the defendant's proposed instruction represented a theory of defense with a basis in the record that would lead to acquittal and

3. That the defense theory was not effectively presented elsewhere in the charge.

*United States v. Allen,* 127 F.3d 260, 265 (2d Cir.1997); *United States v. Vasquez,* 82 F.3d 574, 577 (2d Cir. 1996).

The government does refer to the standard for deciding motions for new trial (Govt. Ltr. at 5-6), but it completely fails to discuss the standard for such motions when they are based on the court's failure to give a jury instruction that was requested by the defense. Instead, the

2

government ignores any discussion of the applicable standard, declines to take issue with Elia's position regarding the applicable standard, and proceeds on the basis of a fictitious standard that it never identifies, let alone attempts to justify. The government's unstated standard is that evidence exists (overwhelming evidence in the government's view) to support the government's theory that it used the same method of accounting that Elia used. (Govt. Ltr. at 4.) That is not the correct standard. The correct standard, as set forth above, focuses on whether the record contains a basis to support the **defendant's** requested instruction. It is not whether the **government's** theory is supported by evidence. */

---

*/ In attempting to support its fabricated standard emphasizing its own evidence, the government takes enormous liberties in its citations to the record, as follows:

Govt. Letter at 3: Pages 1351-1354 contain minimal support for the government's assertion that Elia's records did not contain dates that inventory was ordered.

Govt. Letter at 3: Pages 1047-48, 1349-50 contain **no support** for the government's assertion that Elia's accountant's records contain tax year entries rather than accrual entries for his purchases. Moreover, Elia's accountant's records were incomplete and were admitted for a limited purpose only.

Govt. Letter at 3: It is a distortion to say that Stamm testified that using the accrual method the result would not have materially changed, citing to Tr. 1042-43, 1356-59 and GX 6017. Stamm actually testified on direct that the result would not change "over the years." (Tr. at 1042.) He testified on cross-examination that there could be a "vast difference" if another method were used for a particular year. (Then he added, "Maybe. I don't know.") (Transcript at 1229.) GX 6017 was useless as support for an accrual method result as it admittedly was not based on a complete set of purchase invoices.

Govt. Letter at 4: There is **no support** at Page 1349 for the government's statement that the IRS examined the source of the entries that were carried over to the tax returns to determine how the numbers were derived.

Govt. Letter at 4: It is a distortion to cite to Pages 1351-52 to support the government's statement that there were no journal entries or that unpaid purchases were not included in the accountant's tax calculations. The accountant's workpapers were not authenticated, they were admitted for a limited purpose, and certainly were not authenticated as a complete set of all the accountant's work.

(footnote continued on next page)

The government does not seem to challenge that Elia met the first and third requirements of the *Allen/Vasquez* standard. The government premises its opposition on its incorrect view of the second requirement. The government argues that there was support in the record for its contention that Elia's corporations did not use the accrual method of accounting. That is the wrong standard. The correct standard is whether there is support in the record for Elia's contention that his corporations did use the accrual method of accounting. The government does not dispute that Elia met this requirement through evidence he adduced. Instead, the government cites only to Stamm's purely unsupported testimony that Elia did not use a pure accrual

---

\*/ (footnote continuation)
Govt. Letter at 4: There is **no support** at Page 1354 that "the two bookkeeper witnesses testified, in substance, that Elia's internal sales and purchase records were maintained on a cash basis." Page 1354 does not contain bookkeeper witnesses' testimony. It is Stamm's testimony. Nowhere on Page 1354 does Stamm even refer to testimony by either of the two bookkeeper witnesses.

Govt Letter at 4: As before, there is no support at Pages 1042-43, 1356-1359, for the government's second assertion that the net result between the two methods of accounting would have been "inconsequential in each of the subject tax years." This is a repeated distortion. At best, from a government perspective, Stamm testified that the result would not change "over the years." (Tr. at 1042.) (As opposed to "in each of the subject years.") And, again, the government omits Stamm's testimony that there could be a "vast difference" if another method were used for a particular year ("Maybe. I don't know.") (Transcript at 1229.)

Moreover, even to the small extent that Stamm's conclusory testimony supports the government, it must be rejected as a matter of law. The Second Circuit held in *United States* v. *Vardine*, 305 F.2d 60, 64 (2d Cir. 1962) that, "in any given year a taxpayer on the accrual basis may have a substantially different amount of taxable income than if he had chosen the cash basis."

4

method.*/

However, as pointed out in our original memorandum, Stamm did not always adhere to the official government-coached party line on method of accounting. Sometimes, reality and Stamm's natural instinct to speak truthfully prevailed over what he was drilled to say. He admitted several times that Elia did not treat **the expense side** as anything other than accrual method of accounting (Transcript at 1232, 1236) and that any resemblance of Elia's method of accounting to the cash method was purely related to the **income side**, where it did not matter. (Transcript at 1228-1229.) The government deals with this impediment to its premise by not dealing with it. The government simply ignores record evidence that does not support its argument, as it ignores the law (*United States* v. *Allen, supra, United States* v. *Vasquez, supra*) that does not support its singular desire to convict.

The government cites **no authority** to support its premise that evidence to support the government's theory justifies the court's failure to instruct the jury properly regarding the defendant's theory if the defendant's theory is supported in the record, which it is. Nor does the government argue that the record contains inadequate support for defendant's theory. These failures by the government to dispute the law or the record require that Elia's motion be granted.

---

*/ The government argues repeatedly, based on Stamm's testimony, that Elia's contention that he did use the accrual method is not based on "dispostive evidence." Govt. Letter at 1. However, Elia is not required to present "dispositive evidence." The government also argues, immaterially (and incorrectly), that "in truth and in fact his companies did not use the strict accrual method of accounting." (Govt. Ltr. at 3.) The government also gives reasons to support its contention that Elia's companies did not use the accrual method (Id.) The government also argues (incorrectly) that Stamm's testimony was "uncontradicted" and made it "crystal clear" that he used the same method of accounting that Elia used. (Govt. Ltr. at 4.) And the government repeats these conclusions throughout the balance of its letter. As shown in the previous footnote, the government's support for these assertions is based on distortions and fabrications of the record. Even if supported, they apply a wrong legal standard.

5

### B. Elia Presented More than Adequate Evidence to Require that his Proposed Jury Instructions Be Given to the Jury

The evidence overwhelmingly supports Elia's theory. He checked the accrual method on his tax returns; the general ledger indicated the accrual method on every page; and the tax returns contained analyses of opening and closing inventory. That is more than adequate record support for the defense theory. However, there is more. Any testimony by Stamm that Elia did not use a strict accrual method was wholly conclusory. It was drilled into him and totally unsupported. Moreover, in unguarded moments of candor, **Stamm actually supported Elia's contention**. He testified that Elia used the accrual method on the purchase side (where it mattered) even if there was some resemblance to the cash method on the income side, where it did not matter. (Transcript at 1228-1229.) (It did not matter on the income side because the cash and accrual methods produce the same result on the income side for a retail store that receives payment at the time of the sale.) (Transcript at 1228-1229.) Stamm also admitted that corporations that have inventory, such as Elia's are required to be on the accrual method (Transcript at 1042) and that Elia's accountant did, in fact, report opening and closing inventory, as required only on the accrual method. (Transcript at 1241.)

Since the record conclusively could not support any attempt by the government to argue that Elia failed to produce adequate evidence to support his defense theory, the government essentially engages the defense based on an incorrect, unsupported, and unarticulated legal standard (i.e., evidence existed to support the government's theory that Elia was not on the accrual method). Tangentially, the government could not prevail even if that were the correct standard since the evidence, including portions of Stamm's testimony (1041-1042, 1228-1229, 1232, 1236, 1241) overwhelmingly supported Elia as shown above. However, under the correct

6

standard, see *United States v. Allen,* 127 F.3d 260, 265 (2d Cir.1997), *United States v. Vasquez,* 82 F.3d 574, 577 (2d Cir. 1996), since Elia presented more than adequate evidence to support his theory that he was on the accrual method, he was entitled to the jury instructions he requested. The government never discusses Elia's motion on the basis of that standard and never argues in support of its own unarticulated standard that incorrectly focuses on the government's evidence. It merely pretends that it exists.

### C. The Second Circuit's *Helmsley* Opinion Does Not Support the Government's Position

*United States* v. *Helmsley*, 941 F.2d 71 (2d Cir. 1991) provides overwhelming support for the defense argument and adds nothing to the government's position. The case against Mrs. Helmsley was not based on evidence from defendant's own books and records regarding her sales and purchases, as was the case here. It was based on evidence that she deducted as business expenses items that were purely personal. 941 F.2d at 84. That was not a feature present in the present case. Helmsley's defense was that, notwithstanding these improper deductions, she did not owe a substantial additional tax because she actually had overpaid her taxes because she failed to claim valid depreciation deductions on an "accelerated cost recovery system" ("ACRS"), and, therefore, that she deducted too little of the cost basis of her investment property. Id.

Not only did the government prove that Mrs. Helmsley's expert witness's ACRS computations were incorrect because they failed to consider "recapture," Id. at 85, but even if the expert witness' testimony about ACRS deductions were accurate, the evidence relied on changing the method of depreciation that Helmsley herself elected on her tax returns and, thus, should not have been admissible. Having elected one method of computing depreciation on her

7

tax returns, Helmsley was precluded from relying on a different method in her criminal defense.

> Mrs. Helmsley's insufficiency claim fails on two grounds. First, Padwe's [her expert witness] testimony was at odds with applicable law, and it would not have been error to exclude it completely. Having selected a particular depreciation method – whether or not it was a method authorized under the law – Mrs. Helmsley was not free to recalculate her taxes by resorting to one of the four depreciation methods in ACRS solely to defend an evasion charge. If her original selection of a depreciation period was made for strategic tax-saving purposes, the doctrine of election would prevent her from abandoning that choice. If her original selection was a good faith error, then an exception to that doctrine would allow her, with the permission of the Commissioner, to elect a new depreciation method. The depreciation method used by Padwe was one of four options, all of which would be available for late election in the case of a good faith mistake and at least two of which would entail a deficiency rather than overpayment. Because Padwe's method was not mandatory, therefore, it cannot be used to establish an overpayment in an evasion case. Second, even if Padwe's depreciation method was available and mandatory, his testimony was undermined by the government's cross-examination, and a reasonable trier of fact might choose to reject it, as did the jury in the instant matter.

941 F. 2d at 85. See also id. at 86.

Contrary to *Helmsley*, Elia did **not** seek to change the method of accounting that he elected on his tax returns. He simply asked that the jury be instructed as to that method of accounting (accrual) and that it be instructed that the government is required to use the accrual method of accounting as he had elected it on his tax returns and as there was more than adequate evidence in the record to support his theory that he used the accrual method. There was adequate (we believe overwhelming) support in the record for concluding that Elia did elect (and use) the accrual method. Unlike in *Helmsley*, in the present case, it is the government that changed defendant's elected method of accounting for purchases from accrual to cash. Thus, *Helmsley* actually supports Elia to the extent it holds that the same method of accounting elected by the taxpayer must be used by the government in a tax evasion case. (In *Helmsley*, as often, a method of depreciation was considered a method of accounting.)

8

Moreover, and as required in *Helmsley*, since Elia's accrual method was mandatory, it was required to be used both by him in reporting his taxes and by the government in attempting to convict him of tax evasion. Id.

### D. The Court's Instructions on the Essential Elements of the Offenses Do Not Justify its Failure to Instruct the Jury on the Accrual Method

The government claims that the court's instructions on each and every essential element of the offense were sufficient and that the court "properly refrained" from instructing the jury about accounting methods (again providing no citation to authority). This proclamation is not only unsupported, but it is inherently illogical as well. The court's instruction on the essential element of a substantial tax due and owing is incomplete and meaningless to the jury without adequate instruction on how a substantial tax due and owing is determined. In this case, as conceded in Stamm's testimony, it is proved by several steps, including subtracting **purchases** from gross receipts to arrive at gross income. (Transcript at 1045.) Since the jury was not instructed on Elia's theory regarding purchases, the court's instruction on the essential element of a substantial additional tax due and owing was incomplete. Elia claims (with adequate support in the record) that on his method of accounting, purchases includes accounts payable. Stamm relied solely on paid purchases, and not on accounts payable. (Transcript at 1057, 1244-1245.) The court's refusal to instruct the jury on the proper method for determining purchases based on Elia's elected method of accounting renders its instruction on substantial tax due and owing incomplete and, therefore, meaningless to a jury.

Once a defendant satisfies an initial burden of producing sufficient evidence to warrant submission of a substantive defense to the jury, the prosecution must disprove at least one element of that defense beyond a reasonable doubt. *United States* v. *Mitchell*, 725 F. 2d 832, 836 (2d Cir. 1983) (affirming conviction where there was insufficient evidence to support the

9

defense). The government has not attempted to do so in its opposition. That is not surprising. Not only did Elia produce sufficient evidence in the form of government exhibits (tax returns and general ledgers) to support his theory that he was on the accrual method, but the government's own expert witness supported Elia's theory when he admitted two times that he had no reason to believe that Lenok did not use the accrual method of accounting on the expense side. (Transcript at 1236, see also 1232.) Thus, it is undisputed that Elia's theory was supported by adequate evidence. That being so, he was entitled to the jury instructions he requested, one of which the court stated it would give. Every criminal defendant is entitled to have his theory of the case, if it could amount to a legally sufficient defense based upon the evidence presented at trial, fairly submitted to the jury. *United States* v. *Burke*, 700 F.2d 70, 81 (2d Cir. 1983) (affirming conviction where the defense did not request the instruction in question and there was no "plain error").

### E. The Court Followed an Incorrect Procedure in Ruling Against Elia's Request for a Jury Instruction Regarding the Accrual Method

Under Rule 30 of the Federal Rules of Criminal Procedure, Elia was entitled to have the court instruct the jury on his theory of the case, including the law supporting that theory, if he presented the law correctly and in writing and if the record contained evidence to support it. The government's reliance on providing support for its theory (false support in our view) is an attempt to divert the court from the reality that the government does not and cannot dispute Elia's contention that he did present the law correctly and in writing and that the record does provide more than adequate support for his theory.

The court stated that it would instruct the jury in accordance with Elia's request (with a qualifying prelude) (Transcript at 1412), but it did not do so, and never complied with Rule 30(b)

by ruling that it would not give the requested instruction. After ruling that it would give the instruction (with the qualification) the court simply did not do so.

### F. If the Jury Instructions that the Defense Requested Were Given to the Jury, The Result Would Have Been an Acquittal

If the jury were instructed by the court on the accrual method of accounting as requested by the defense, the result would have been an acquittal. Accounts payable would have come into play; it would have been essential to proof of purchases, which is a component of proving a substantial additional tax. The government admitted that it did not possess evidence of accounts payable and that it relied solely on paid purchases. (Transcript at 1057, 1244-1245.) The invoices that were missing from the search material were ultimately admittedly not replicated in Lily's purchase journal, as she ultimately admitted that it was incomplete after initially insisting defiantly that it was accurate and reliable. Moreover, the government failed to subpoena the missing invoices from Elia's suppliers. For these reasons, the evidence of accounts payable – which is a component of purchases on the accrual method of accounting – was insufficient as a matter of law. That amounts to insufficient evidence of an essential element of the offense.

The difference in methods of accounting could be "vast" in a given year according to Stamm's testimony at one point (Transcript at 1229) and according to the Second Circuit. *See, United States* v. *Vardine*, 305 F.2d 60, 64 (2d Cir. 1962) ("in any given year a taxpayer on the accrual basis may have a substantially different amount of taxable income than if he had chosen the cash basis.")

### G. The Errors Require that the Guilty Verdicts as to all the Counts of the Indictment Be Vacated

For the same reasons that support our argument that the court should have instructed the jury on the accrual method of accounting, as requested, the evidence was legally insufficient. Absent proper evidence of purchases, including accounts payable, the evidence of a substantial additional tax due and owing was legally insufficient. The convictions on the evasion counts (Title 26 U.S.C. Section 7201) must be vacated and a new trial must be ordered.

The jury did not say by its verdict that it was unanimous on its theory of guilt for the Section 7206(1) counts. Therefore, the verdict as to those counts could have been based on the income and tax components of the counts, as to which it was not properly instructed, as opposed to the foreign bank account alternative. Therefore, those counts of conviction must be vacated together with the tax evasion. The result is the same for the conspiracy count, which was based on alternative theories, including income theory that was improperly presented to the jury. "Where an instruction defining one of two alternative grounds is legally erroneous, a court must reverse unless it can determine with absolute certainty that the jury based its verdict on the ground on which it was correctly instructed." *United States* v. *Joseph*, ____ F.3d ____, 2008 WL 4137900, at *4 (2d Cir. Sept. 9, 2008), citing *Griffin* v. *United States*, 502 U.S. 46 58-60 (1991).

## CONCLUSION

Based upon insufficiency of the evidence, the verdicts must be vacated and the indictment must be dismissed. Alternatively, based upon the court's refusal to instruct the jury on the accrual method of accounting, as requested by the defense, the verdicts must be vacated and a new trial must be ordered.

Respectfully submitted,

Jared J. Scharf
1025 Westchester Avenue
White Plains, New York 10604
(914) 682-9777

Adam L. Scharf

Attorney for Defendant
Yehezkel Elia

Dated:  White Plains, New York
        September 17, 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

        v.                                                 07 Cr. 543 (KMK)

YEHEZKEL ELIA and
DAVID ELYAHO
                                                       **AFFIDAVIT OF SERVICE**

              Defendants.

-------------------------------------------------------x

STATE OF NEW YORK          )
COUNTY OF WESTCHESTER  ) ss:

       CHRISTINA A. OGANDO, being duly sworn, deposes and says:

       1. I am not a party to this action and I am over the age of 18.

       2. On September 17, 2008, I served a true copy of the attached Memorandum Of Law In Behalf Of Defendant Yehezkel Elia In Reply To Government Opposition And In Further Support Of Motion For New Trial And For Judgment Of Acquittal, by ECF and First Class Mail delivery to the following persons at the following address:

                Cynthia Dunne
                Assistant United States Attorney
                United States Attorney's Office
                300 Quarropas Street
                White Plains, New York 10601

                Joseph A. Vita, Esq.
                327 Irving Avenue
                Port Chester, New York 10573

                                                                                _____
                                                                            CHRISTINA A. OGANDO

Sworn to before me on this
17th day of September, 2008

_____
Notary Public

                                                                      KATHERINE SIMICEVIC
                                                      Notary Public, State of New York
                                                              No. 4956357
                                                    Qualified in Westchester County
                                               Commission Expires September 18, 2009